[*General Term, April,* 1873.]

F. W. MOORE, CITY SOLICITOR, ETC. *v.* S. W. HOFFMAN, CITY AUDITOR; ROBERT W. MOORE, CITY TREASURER; THE CITY OF CINCINNATI; JAMES W. FITZGERALD, AND JOSIAH L. KECK.

All municipal corporations in Ohio derive their powers by delegation from the legislature, which has conferred upon them no authority to appropriate public moneys raised by taxation to the payment of expenses for entertaining guests invited to and receiving their public hospitalities.

Injunction is a proper remedy to restrain such unauthorized use of the public moneys.

Courts have no power to restrain by injunction or otherwise, legislation by the council of a municipal corporation, but can restrain the carrying out or execution of illegal or unauthorized legislation ; and where officers or members of council are appointed by the council to effect the objects of such legislation, such officers or members may be restrained from doing so as effectually as if they were private citizens or strangers.

A city council has power to appropriate money for "incidentals" without specifying the particular objects of expenditure ; but no expenses can be incidental which are not authorized by law to be incurred, and which could be enjoined if specified in an appropriation to pay them.

Where such appropriations for "incidentals" are made monthly for the following current month, an unexpended balance need not be covered into the treasury to be again appropriated, but the same stands appropriated for such purpose, and the succeeding appropriation can be made less to the amount of such unexpended balance.

*Stallo & Kittredge*, for plaintiff.

*Pugh & Throop*, for defendants.

YAPLE, J. This action is brought by the city solicitor of the city of Cincinnati to restrain the unlawful application and use of the moneys of the city, which have come into its treasury by means of taxes levied upon the citizens and property within it.

He is the law officer of the city, acting in such cases by virtue of statutory authority, in behalf of the tax-payers and property within the city limits, and to his action in the premises this court is bound to give respectful consideration and careful attention.

The petition states that on the 3d day of September, 1872, the city council of the city of Cincinnati adopted a resolution inviting his excellency, U. S. Grant, President of the United States, and Horace Greeley, a citizen and resident of the State of New York, to visit the city of Cincinnati, and to become its guests during the continuance of the Cincinnati Industrial Exposition then holding, and to continue until in October of that year; that the council then appointed the defendants, Fitzgerald, president of the council, and Keck, president of the board of aldermen, a special committee to invite and procure the attendance of such guests; that they accepted the trust, went to Washington City and to New York, and invited President Grant and Mr. Greeley to visit and become the guests of the city during the exposition; that Mr. Greeley accepted, came, and was entertained as the city's guest; that in the carrying out of the resolution and in the entertainment of Mr. Greeley large expenses were incurred, which have not yet been paid, except in part, and which the defendants are intending and attempting to procure to be paid out of the city treasury; that, on the day of the passage of the resolution of invitation, there was in the city treasury unexpended the sum of $730.46, appropriated on and before the 9th day of August, 1872, for "*incidental expenses,*" for that and previous months; that during the period of time covering these transactions, there was and still is in force a resolution of the city council, passed August 7, 1856 (Dis-

ney's City Ords., 1856, pp. 833, 834), providing, among other things, that the city auditor shall receive and accept as a final voucher the certificate drawn for money in the treasury legally appropriated, of special committees, upon which certificate he is authorized to draw his warrant for the amount of money mentioned therein upon the city treasurer in favor of the payee thereof; that, on September 10, 1872, Fitzgerald, as chairman of such special committee, drew a certificate upon the auditor for $225, upon which the auditor drew his warrant upon the treasurer for that amount, who paid the same to Fitzgerald, who, with Keck, expended the same in the matter of inviting and entertaining the city's guest, Horace Greeley; and that a large further sum is yet due to divers persons on account of the entertainment of Mr. Greeley as the guest of the city, which the defendants intend to have paid out of the city treasury by said Keck and Fitzgerald drawing their certificate as such special committee, and presenting the same to the auditor, who will draw his warrant therefor upon the treasurer, who will pay the same out of the city treasury.

The petition prays for a perpetual injunction to restrain all the defendants from doing any act toward paying such unpaid expenses out of the city treasury, and for other proper relief, etc.

To this petition all the defendants, except the treasurer, demur, on the sole ground that it does not state facts sufficient to constitute a cause of action against them, or any of them.

This case was originally brought against the auditor and treasurer and the city, the former two of whom, by answer, denied that they intended to pay any such moneys without it was appropriated, and without first receiving proper vouchers; and, as it did not appear that Fitzgerald and Keck still claimed to be such special committee, or that they, as such, contemplated drawing their certificate upon the auditor for any of the unpaid expenses (the $225 having been paid before suit brought), this court, in

Special Term, refused to allow an injunction against either of them. Neither did it appear whether the city claimed that there was any of its ordinances appropriating any money to pay these expenses, or whether the passage of one by the council would not be first requisite to enable any one to act in order to draw the money from the treasury. Relief against the city was therefore denied, because courts have no power to enjoin legislation by a city council, any more than they would be authorized to enjoin the legislature of the state from enacting any law or passing any resolution, as city councils merely exercise such legislative powers as are delegated to them by the legislature of the state, for the convenient and proper exercise of the function, the legislature having authority to pass, itself, every ordinance and resolution that such council may. *People* v. *Sturtevant*, 9 N. Y. (5 Seld.) 263; *Whitney* v. *Mayor, etc.*, 28 Barb. 233; *People* v. *New York*, 32 Barb. 35; Hill. Inj. 318, sec. 20.

Fitzgerald and Keck, the special committee, were then made parties, and this amended petition filed. By demurring, the defendants admit the facts stated therein to be true, for the purpose of passing upon the questions presented by it for decision.

When the common council passed this resolution, and appointed Fitzgerald and Keck a special committee to carry it out, its legislation upon the subject was concluded— at an end. Then its mere execution began. The city solicitor and judge of the police court, or any mere private individuals, could as well have been appointed such committee, as the presidents of the two branches of the council. Nothing after the passage of the resolution has been legislative in its nature, but merely ministerial. Keck and Fitzgerald are as liable, therefore, to be restrained by injunction, if this be a proper case upon its merits to warrant it, as any person or officer who may undertake to execute or carry out the ends of illegal legislation. 5 Seld. 263.

Before passing upon the main question involved in the

Moore, etc. *v.* Hoffman et al.

decision of this case, it will be proper to decide certain preliminary questions raised by the plaintiff, which are important as involving the financial practice of the city acted upon for many years. The custom of the city council is, and has been, every month, to appropriate from the general fund, a certain specified amount of money for "incidentals"—that is, for incidental, or contingent and unforeseen expenses, or outlays; and if, at the end of any month, such previous appropriations be not all expended, the unexpended balance is not returned, or covered into the treasury and reappropriated, but it stands as appropriated to "incidentals," and the next appropriation is made less by the amount of such unexpended balance.

Complainant's counsel contend that an appropriation for "incidentals" can not be legally made, as the precise things for which the money is to be expended are not specified. To require this would be impracticable, needlessly embarrass, and often prove injurious to the interests of the city; and to require the council, at the end of every fiscal month, to cover these unexpended balances into the general fund in the treasury, and immediately reappropriate them for the next month, instead of simply making the appropriation for that month so much less, could serve no useful purpose, and would entail much needless labor in the keeping of the auditor's and treasurer's accounts. Once appropriated, always appropriated, is the rule. Congress has, by law, required unexpended balances, at the end of every two years, to be covered into the treasury of the United States. Previously, unexpended appropriations remained for years, which caused confusion and embarrassment, as often they would never be needed for the original purpose. By being covered back into the treasury, they can be appropriated for any legal purpose.

But it is obvious that all expenses of a municipal corporation in this state, whether "incidental" or specific, must be for some legally authorized purpose—an object which such corporation has power to promote or effect; and

this power and authority must be given it by legislative grant. If outside of this, such expenditures can not be "incidental" expenses of the corporation, but merely the unauthorized and illegal use of the public moneys, the same as if a specific unlawful object of expenditure were definitely mentioned.

So, we are brought to the real question presented for decision by this case. Can a municipal corporation in Ohio expend moneys in its treasury, raised by taxation, in entertaining guests, which its authorities have invited, and on whom they may bestow the hospitalities of such municipality?

Anciently, and, I believe, generally, in Europe to this day, cities possessed and possess many independent powers, similar in their nature to those of the state or kingdom of their location, they often being, in a great measure, the state or kingdom itself. They could invite and entertain sovereigns and illustrious guests, to whom the city's ruler is in the habit of tendering the keys, or its freedom—that being symbolical of the fact that such city was once sovereign, walled, and invested with the right to keep out all comers, who might claim a right to rule it, surrendering the keys of the gates to the visiting king or emperor of the state, being the highest token of submission and devoted loyalty to and confidence in him.

Our municipal hospitalities to invited or visiting guests are evidently the adoption of this idea of city independence and sovereignty. Its propriety is strengthened in general opinion by the fact that municipalities were existing facts before our constitutions were framed. Thus our new constitution did not destroy and recreate their corporate existence as *quasi* persons. As such, they continued liable for all their debts and obligations, and capable of enforcing all their pre-existing contract and property rights. But in Ohio they did, as parts of the state, vest all legislative power in the state, to be exercised directly for them by the legislature, or to receive such portion thereof

Moore, etc. v. Hoffman et al.

back by delegation as the legislature, in its discretion, might, from time to time, see fit to confer upon them. Their powers are, then, in every case, to be ascertained by the grants which the legislature has conferred upon them in their respective charters; and where the legislature has clearly refrained from conferring upon them a given power, its failure to do so is as clear a forbidding of the exercise of such power as though there were an express prohibition. *Prigg* v. *Pennsylvania*, 16 Pet. 617, 618. It is unnecessary (for that would be vain) for the court to inquire whether municipalities ought not to have the right and power, properly and strictly guarded against abuse, to expend money in the entertainment of guests, where to do so would redound to the general benefit of their citizens and commerce; to defray the expenses of celebrations and meetings to promote great improvements on which their future prosperity and growth may largely depend; or to make charitable donations of money where a public calamity has suddenly befallen a large community, as recently happened to our sister city of Chicago and to the people of the Northwest, by fire—cases in which all felt it a duty to give liberally according to their means, and preferred that aid might reach the sufferers at once, by the immediate advancement of assistance by the corporation, rather than to await the slow and laborious process of raising private contributions. We can only declare the law as it is. We possess no legislative power, much less to legislate where the legislature has declined to do so. Our legislature is in session more than one-fourth of every year, and to it resort must be had to remedy or supply all defects or omissions in legislation.

We have carefully examined every provision of our statutes conferring powers upon municipal corporations, the chief among which is section 199 of the municipal code, passed April 18, 1870 (67 Ohio L. 72), containing forty-one enumerated grants of power. They are all limited, definite, and specific. Nowhere, in the whole code, are any, even

general words, to be found looking to the authorization of the expenditure of moneys for such purpose as that complained of in this case. The power is either unlimited or does not exist. We have not stopped here; but have examined the reported cases decided by courts in other states, and can find no single authority that countenances outlays of the public moneys by a city for such purposes.

*Hodges* v. *The City of Buffalo*, 2 Denio. 210, is directly in point.

By statute, power was conferred upon that city to make such regulations " for the good government and order of the said city, and the *trade and commerce thereof*, as may be necessary to carry into effect the powers given to said council. (Our municipal code contains no such general words as these, or their equivalent.) The city council passed a resolution to aid in the proper celebration of the 4th of July, appointing a committee, composed of their members, to carry out the resolution. Military guests from Detroit and Rochester were invited and publicly entertained. For furnishing such entertainment and a ball, an agreement had been made with Hodges to pay him $1,200. Private persons paid all this sum but $355.11, and to recover that amount he sued the city; but judgment was rendered against him. The court held, that the city had " no authority to furnish entertainment for the citizens and guests of the city at the public expense." The court say: " Such power must be conferred by statute. It can not be taken by implication. Municipal corporations have no other powers than such as are expressly granted, or such as are necessary to carry into effect the powers expressly conferred. The act to incorporate the city of Buffalo contains no provision which countenances the claim now set up as appertaining to the city corporation." The correctness of this decision is affirmed in *Halstead* v. *Mayor, etc., of New York*, 3 Comst. 433, where it is said: " Until the decision of *Hodges* v. *Buffalo*, nothing was more frequent than for city authorities to vote largesses and give splendid ban-

quets for objects and purposes having no possible connection with the growth or weal of the body politic, thus subjecting their constituents to unnecessary and oppressive taxation. Since the decision in that case, the principle has been more generally recognized and acted upon, that these corporations are creatures of limited powers, especially upon the subject of the appropriation of the funds of the people."

In the case of *Tash* v. *Adams*, 10 Cush. 252 (the court being composed of Shaw, C. J., and Dewey, Metcalf, Fletcher, Bigelow, and Caleb Cushing, JJ.), it was held, that the town of Natick had no authority to appropriate money to celebrate the anniversary of the surrender of Cornwallis. In *Hood* v. *Lynn*, 1 Allen (Mass.), 103, it was held, that "a town has no authority to appropriate money for the celebration of the Fourth of July." See also, to the same effect, *Gerry* v. *Stoneham*, Id. 319.

In 4 Gray (Mass.), 502, *Claflin* v. *Hopkinton*, it is held, that a town has no authority to vote money for the purchase of uniforms for an artillery company.

Dillon, on Municipal Corporations, p. 141, sec. 100, says: "Without express power, a public corporation can not make a contract to provide for celebrating the Fourth of July, or to provide an entertainment for its citizens or guests. Such contracts are void; and although a plaintiff complies therewith on his part, he can not recover of the corporation." We find no decision, or even *dictum*, of any court to the contrary, or qualifying in the least this rule. All the authorities concur that the use of such moneys for such purposes may be restrained by injunction. Then, although the present may not be, owing to its circumstances and associations, such a case as could, with most propriety, have been chosen to test this general question, it yet stands upon precisely the same legal grounds that one would which involved the most glaring and inexcusable misappropriation and waste of the public money.

Demurrer overruled.