[NEW YORK GENERAL TERM, October 4, 1858. *Davies, Sutherland* and *Ingraham,* Justices.]

---

WHITNEY and wife *vs.* THE MAYOR &c. OF THE CITY OF NEW YORK, and others.

A court of equity will not interfere by injunction to restrain a municipal corporation from passing a resolution or ordinance giving permission to a rail road corporation to run steam engines on particular streets or avenues of the city; unless in a case where it appears that the mere voting on, and formal passage of, such resolution or ordinance, would instantly, without any action or attempt to enforce any right or privilege under it, effect an irremediable private injury.

ORDER to show cause why a temporary injunction should not be continued.

*G. C. Bronson, D. Dudley Field* and *Waldo Hutchins,* for the plaintiffs.

*C. O'Conor, Wm. Curtis Noyes, C. W. Sandford* and *R. Busteed,* for the defendants.

SUTHERLAND, J. The plaintiffs, on their verified complaint, and a great number of affidavits in behalf of themselves and others similarly situated, ask for an injunction restraining the mayor, aldermen and commonalty of the city of New York, from granting authority or permission to the New York and Harlem Rail Road Company, or to any other company or person, to run steam engines on the Fourth avenue, or on the track of the said company below or south of Forty-second street, in the city of New York; and particularly from passing an ordinance, of which the following is a copy:

"ORDINANCE, in relation to the use of steam by the Harlem and New Haven Rail Road Companies as far south as 32d street, and repealing the resolution approved December 27th, 1854.

Be it ordained by the mayor, aldermen and commonalty of the city of New York, in common council convened:

Sec. 1. The New York and Harlem Rail Road Company, and the New York and New Haven Rail Road Company, are hereby authorized, empowered and permitted to use steam in the drawing of their passenger and freight cars on the track of the New York and Harlem Rail Road Company in Fourth avenue, to and from the northern extremity of Manhattan or New York Island, to the southern side of Thirty-second street.

Sec. 2. The resolution adopted by the board of aldermen December 7th, 1854, by the board of councilmen December 22d, 1854, and approved by the mayor December 27th, 1854, as also all other ordinances and resolutions, or parts thereof,

so far as the same conflict herewith, including the resolution requiring the New York and Harlem Rail Road Company to run small cars to Forty-second street, are hereby annulled and repealed.

Sec. 3. This ordinance shall take effect immediately."

And also restraining the other defendants, the New York and Harlem, and the New York and New Haven Rail Road Companies from running any steam engine upon the track of said rail road, below or south of 42d street; where the locomotives now stop, in accordance with the ordinance of 1854.

The complaint alleges that the board of aldermen have already passed the resolution or ordinance, of which a copy is given above; and that the plaintiffs are informed and believe that it is the intention of a majority of the other board of the common council to pass it, and of the company to immediately avail themselves of it. The intention to pass the ordinance is not denied on the part of the mayor &c., nor is there any express denial on the part of the rail road companies that they intend to avail themselves of the ordinance when passed. The plaintiffs reside on Murray Hill, (so called,) at or near the corner of 35th street and 4th avenue. It is not alleged or pretended that the rail road companies will attempt to run their locomotives below 42d street unless the ordinance is passed. Should the ordinance be passed and the rail road companies avail themselves of it, and actually run their locomotives to the south side of 32d street, I have no doubt from the complaint and other papers used and submitted on this motion, that such actual running of locomotives south of 42d street, *unless authorized* by the ordinance in question, or otherwise legally authorized, would be a nuisance specially injurious to the plaintiff and to others living on Murray Hill, from the noise, smoke, gas, annoyances and dangers necessarily incidental to or resulting from the running of locomotives. Conceding this, it is not necessary, in my judgment, to state any other fact in the case to dispose of the motion.

In my opinion, neither the common council nor either branch

of it should be restrained by the order of this court from meeting, or voting on, or from the mere passing of the ordinance, whether, if passed, it would or would not authorize the railroad companies to run their locomotives south of 42d street. The mere passage of the ordinance in question, though it repeals the ordinance of 1854, will not kindle the fires to set the locomotives in motion, and thus create the smoke, gas, noise, annoyances, danger and injuries necessarily incidental to, or resulting from, the use of locomotives in populous cities; and which, unless authorized by ordinance or otherwise, the plaintiffs would have a right to complain of; and the court a right to prohibit as a nuisance.

Should the ordinance be passed by the common council and approved of by the mayor, the rail road companies must undertake to avail themselves of the repeal of the ordinance of 1854, and of the authority or permission granted, or purported to be granted, by the ordinance in question; and their agents or servants must actually kindle the fires and set the locomotives in motion south of 42d street, before the incidental annoyances and injuries complained of and asked to be prevented, can take place.

In my opinion, if the court has power, at the instance of a private citizen, to restrain the mere act of voting on a resolution or ordinance proposed in either board of the common council, or to restrain its mere passage, as distinguished from the power to restrain an act or acts intended or attempted to be done and justified under it after its passage, there has been no sufficient reason shown in this case for the exercise of the power, by restraining the mere passage of the ordinance in question.

Indeed, after giving this question of the propriety, and even the question of the power of the courts to interfere with the common council before the passage of a proposed ordinance or resolution; and at the suit of a private citizen, to restrain the members of the common council, or of either branch, from meeting, voting on, or passing such proposed resolution or

ordinance, the most critical and laborious examination, I must say, that I have come to the conclusion that the courts ought not thus to interfere in any case, unless in a case where it should appear—and I have not been able to conceive of any such case—that the mere voting on, and formal passage of, the proposed resolution or ordinance would instantly, without any action or attempt to enforce any right or privilege under it, effect an irremediable private injury.

On this question I do not see any reason for the distinction taken in some of the cases between legislative acts or ordinances (so called) of the common council, and resolutions operating as grants of privileges or property; or for the distinction taken in other cases between revocable and irrevocable ordinances or grants. The members of the common council are public officers, acting as such under a delegation of limited political power; and the mere passage of an ordinance by them, granting privileges or property which they had no power to grant, could not effect a private injury, because it would be utterly void. The mere passage of such an ordinance might be a breach of a public trust, for which the people of the state, by their attorney general, would have a right to call the municipal body to account. If passed through bribery and corruption the individual members bribed and corrupted might be indicted and punished; whether any attempt was ever made to carry the ordinance into execution or not; or whether the subject matter of the ordinance was within the scope of the powers of the common council or not; or whether the ordinance was called for by the public good or public convenience or not.

In this case, on the question of the propriety of undertaking to restrain the mere voting on or passage of the ordinance in question by the common council or the board of councilmen, the distinction between that question and the question whether, when passed, the ordinance would or could authorize the rail road companies to drive their locomotives down to 32d street to the injury of the plaintiffs or others similarly situated, must

be carefully taken and kept in view. The power to pass an ordinance is one thing; its effect when passed is another thing. The right to vote on a resolution proposed for adoption is one thing; the power to confer the privilege or to authorize the act undertaken to be conferred or authorized is another thing. In one sense the legislature has power to pass any law, constitutional or unconstitutional. No court would undertake to restrain the passage of an unconstitutional law; but all action under an unconstitutional law would be restrained by the courts in many cases; and in restraining such action, the courts would say, in another sense, that the legislature had no power to pass the law. I do not see but that the right of the common council to meet, vote on, and formally to pass resolutions should be as free from the restraint of the courts, at the suit of a private citizen, as the right of the legislature to pass laws.

It appears to me it will be time enough for the courts to interfere and adjudicate, at the instance of a private citizen, upon the effect or legality of an ordinance of the common council, after its passage, and when some one evinces at least an intention to avail himself of it, and to act, or to enforce some claim, right or privilege under it to the injury of the complainant. Courts of equity have power to restrain, and will in many cases restrain an act or threatened act, but after the examination which I have given the case, I cannot avoid expressing the opinion that the circumstances must be of the most extraordinary character, which would authorize the court to consider the mere saying " aye " or " no," by the members of either branch of the common council, on a proposition or resolution before them, as an act to be restrained by the court, in the exercise of its ordinary jurisdiction and discretion. The complaint in this case alleges, on information and belief merely, without stating the sources of the information, or the grounds of the belief, (unless alleged as an inference from the other facts alleged in the complaint,) that a majority of each board of the common council have been bribed, either by one

of the rail road companies, or its agents, or other interested persons, &c. to allow the said rail road companies to run steam engines on the 4th avenue to 32d street, and to vote for the ordinance in question. The charge of bribery appears to have been made as an inference merely from other allegations in the complaint; and in any view I think it was too loosely made to call for a denial of its truth on the part of the members of the common council. But whether this charge of bribery is true or false, or whatever the motive of the members of either branch of the common council in voting " aye " or voting " no" on the ordinance, or in passing it; as the mere voting on it, or passing it, for the reasons above stated, is not an act to be restrained as injurious to the plaintiffs, the charge of bribery is of no consequence, to the question of restraining the mere passage of the ordinance.

Should the ordinance pass, and the rail road companies undertake to avail themselves of it, on an application by the plaintiffs or others similarly situated for an injunction restraining the use of locomotives below 42d street, the question of the power of the mayor, aldermen, &c. to authorize such use to the special injury of the plaintiffs and others residing on Murray Hill, so eloquently and ably argued before me, would have to be considered and passed upon. But if the view above taken of this case is correct, the question whether the ordinance will, if passed, authorize the rail road companies to run their locomotives down to the south side of 32d street is not before me, and any opinion expressed now on that point would be outside of the case. Without expressing, therefore, any opinion on that question, the motion for an injunction restraining the passage of the ordinance must be denied, on the ground that the mere passage of the ordinance will not and cannot produce any injury to the plaintiffs; and the other part of the relief asked for I consider prematurely asked for; and therefore pass no opinion as to the plaintiffs' right to it at the proper time.

The temporary injunction order made in this case must be vacated, and the order to show cause discharged, with $10 costs.

[NEW YORK SPECIAL TERM, October 28, 1858.  *Sutherland*, Justice.]