WILLIAM FITZGERALD

*v.*

HENRY HARMS.

1. INJUNCTION—*allowance of claim by county board.* A court of equity will not interfere by injunction with the action of a county board, in regard to the affairs entrusted to them by law, where no fraud or corruption is shown.

2. Where a county board, not acting fraudulently or corruptly or by collusion, settles and adjusts a claim of a contractor for extra labor and work upon a foundation of a court house, caused by changes in the original plans, a court of equity will have no jurisdiction to enjoin the payment of the sum thus allowed.

3. If a county board should undertake to appropriate the money of the county for a purpose not authorized by law, a tax-payer may doubtless have the same prevented by bill in equity for an injunction.

WRIT OF ERROR to the Appellate Court of the First District; the Hon. THEO. D. MURPHY, presiding Justice, and Hon. GEO. W. PLEASANTS and Hon. JOS. M. BAILEY, Justices.

Mr. CONSIDER H. WILLETT, for the plaintiff in error.

Mr. R. H. FORRESTER, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by William Fitzgerald, a tax-payer, in the circuit court of Cook county, to enjoin the county commissioners from paying Henry Harms, a contractor, who contracted with the county to erect the foundation of the Cook county court house, a certain sum of money, amounting in the aggregate to $34,689.82, and to restrain the county clerk from issuing an order for said amount, and to enjoin the treasurer of the county from paying the same. In the circuit court a hearing was had on bill, answer and proofs, and the prayer of the bill was granted and a perpetual injunction decreed.

The defendant in the bill, Harms, appealed to the Appellate Court, where the decree was reversed and the bill dismissed. To reverse this decision the complainant in the bill has sued out this writ of error.

On the argument a number of questions have been ably argued by counsel who represent the complainant and the defendant in the bill, but in the view we take of the case there is but one question which it will be necessary to consider, and that is, whether a court of equity has jurisdiction to interfere with the action of the county commissioners in regard to county affairs entrusted to them by law, where no fraud or corruption is shown.

Section 7 of article 10 of the constitution of the State provides, that the county affairs of Cook county shall be managed by a board of commissioners consisting of fifteen persons.

Under section 24, Rev. Stat. 1874, p. 306, each county has power to make all contracts, and do all other acts in relation

to the property and concerns of the county, necessary to the exercise of its corporate powers. Under section 25 of the same act, the county board has power to manage the county funds and county business ; to examine and settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county. By section 26 the county board is required to erect or otherwise provide, when necessary, and the finances of the county will justify it, and keep in repair, a suitable court house, jail, and other necessary county buildings.

Under these provisions of the law it appears that Henry Harms made a written contract with the board of commissioners to construct the foundations of the Cook county court house according to certain plans and specifications, for $84,-800. About six months after the contract was executed, and when the excavations and piling for the foundations were nearly completed, the board of commissioners made changes in the original plans, involving a more costly and expensive job, which the contractor was ordered by the architect employed by the county to proceed to execute, and which he did.

After the work had been done the contractor claimed that he was entitled to be paid for the work according to measurement and value, which amounted to the sum of $162,967.89.

The dispute in regard to the manner in which the value of the work was to be estimated and the amount to be paid was submitted by the architect to the board. The board referred the matter to a committee, but the committee, after having the matter under consideration for some time, and not being able to agree, reported the whole matter back to the board for its consideration. The board, on the 23d day of April, 1877, after a discussion of the disputed claim, as a settlement passed a resolution allowing Harms the sum of $141,640.85 including prior allowances, reserving $3949.02 until the question of responsibility of leveling up the foundations should be adjusted. The sum allowed, that is $141,640.85, is, as claimed by the complainant, $34,689.82 more than Harms was entitled to

receive under the contract, after making a liberal allowance for all extras.

We shall not stop to inquire whether the claim of the contractor was meritorious or not. We have referred briefly to some of the leading facts, for the purpose of showing that the claim was one of a character that came within the jurisdiction and power of the county board to settle and adjust. Under the statute the board of commissioners had the power to erect a court house, it had the authority to make all contracts necessary to the exercise of its corporate powers, and it was likewise entrusted with power to examine and settle all accounts against the county and all accounts concerning the receipts and expenditures of the county.

If the county board should undertake to appropriate money for a purpose not authorized by law, as was the case in *Livingston County* v. *Weider,* 64 Ill. 427 , *Chestnutwood* v. *Hood,* 68 id. 132, and *Colton* v. *Hanchett,* 13 id. 615, doubtless a tax-payer might, by bill, invoke the aid of a court of equity. It is also doubtless true, if the allowance of a claim was obtained by the fraud or corruption of the board or its members, a court of equity might lend its aid to prevent the consummation of the fraud by a payment of such a claim. But we understand it has been a uniform rule for courts of equity to refuse to interfere by injunction with the action of municipal corporations, so long as they are acting within the bounds of the powers conferred upon them by law, and their action is not tainted with fraud.

*Moores* v. *Smeadley,* 6 Johns. Ch. 28, is an early and important case on the question. In deciding the case the chancellor said : " I can not find, by any statute or precedent or practice, that it belongs to the jurisdiction of chancery, as a court of equity, to review or control the determination of the supervisors in their examinations and allowance of accounts as chargeable against their county, or any of its towns, and in causing the moneys so allowed to be raised and. levied. There was no allegation of fraud or corruption in the case. The

most that could be said was that they made an erroneous determination. The act which has been cited, (Laws of N. Y. vol. 2, p. 137,) gave the supervisors authority to examine, settle and allow all accounts chargeable against the county, and to ascertain each town's proportion, and to add such further sum as any town should have voted to be raised for the destruction of noxious animals, and to cause all such sums to be raised and levied." See also, *Meserole* v. *The Mayor and Council*, 8 Paige, 198; *Gillespie* v. *Broos*, 23 Barbour, 370.

In the case of *Andrews* v. *Knox County*, 70 Ill. 65, which was a bill to enjoin the board of supervisors from erecting a jail, it was held, in the absence of any charge of fraud, corruption or dishonesty in a board of supervisors in the exercise of the discretion vested in them in respect to providing a suitable jail for their county, a court has no jurisdiction to order the issue of an injunction to prevent their action.

It may be that the board of commissioners did not act with that discretion and wisdom in allowing the claim of Harms, that should have characterized their deliberations. Perhaps it would have been wise in them to have refused to allow the claim, and thus referred him to a court of law, where the proper amount could have been fixed by a jury; but, however that may be, a court of equity can not interfere with the deliberations or the action of the board of commissioners over a matter which the law has entrusted to them, unless fraud be shown, or they have undertaken to allow a claim which was not of a character to be paid by the county.

The commissioners are elected by the people, clothed by the law with certain powers, and so long as they keep within their jurisdiction, although they may err in judgment, the courts are powerless to interfere. The *Town of Petersburg* v. *Mappin*, 14 Ill. 194.

In such a case the remedy, and the only one in the hands of the tax-payers, is a judicious use of the ballot at the polls. In that mode incompetent men can be defeated, and those

competent and worthy to discharge the duties of the office can be selected.

The decree of the Appellate Court will be affirmed.

*Decree affirmed.*