EDWARD A. STEVENS *et al.*

*v.*

ST. MARY'S TRAINING SCHOOL *et al.*

*Filed at Ottawa, January 19, 1893.*

1. COUNTIES — *their powers.* A county has power to make and do all acts in relation to its property and concerns necessary to the exercise of its corporate powers; and each county board has power to manage the county funds and the county business, and to examine and settle all accounts against the county.

2. SAME — *judicial control.* Counties are public corporations created for the purpose of convenient local government, and possess only such powers as are conferred upon them by law. Their powers are more limited than those of incorporated cities and villages. But in the exercise of such discretionary or legislative powers as are conferred on them by law, they are as much beyond judicial control as other municipal corporations.

3. MUNICIPAL CORPORATIONS — *power of courts of equity to restrain them.* Tax payers and property holders may resort to equity to restrain municipal corporations and their officers from making unauthorized appropriations of the corporate funds, and from misapplying the moneys of the corporation and from making payment of illegal claims. But, as a general rule, the restrictions upon the right of a court of equity to interfere with the action of municipal bodies extend to cases where these bodies are exceeding their lawful powers.

4. The weight of authority and the tendency of the more recent decisions are in favor of the position that the restraining power of the courts should be directed against the enforcement, rather than the passage of unauthorized orders and resolutions or ordinances by municipal corporations.

5. There are instances when this restriction upon the power of the courts will sometimes be disregarded, as when the corporate body is exercising mere business or ministerial, rather than legislative, powers, or is wrongfully disposing of property held by it as trustee for the public, or is attempting to act upon matters not, by its charter or by the law, subject to its jurisdiction.

6. It is well settled that courts of equity will not attempt to control the discretionary or legislative powers vested by law in municipal corporations.

7. Same — *whether estopped to aver their own incapacity.* A municipal corporation which has entered into a void contract will not be estopped from taking advantage of its own incapacity when suit is brought upon such contract, or other efforts are made to secure its execution.

8. County boards — *exercise of legislative powers — interference of courts of equity.* Where county boards are acting within the boundaries of their legislative powers, the courts will not only refrain from interfering with the passage of resolutions or orders by them, but will also refuse to enjoin the enforcement of such resolutions and orders, except in certain cases where they are unreasonable.

9. A court of equity has not the power to enjoin a county board from passing a resolution that an illegal contract be made by the county, and from making an order that an illegal claim be allowed against the county, where no irreparable injury is likely to ensue therefrom, but it may enjoin the execution of such contracts when made and the payment of such claims after their allowance.

10. Same — *appropriating funds in aid of sectarian schools.* The county boards in this State have no power to appropriate county funds in aid or support of sectarian schools, or of any school controlled by a church or religious denomination, as that is prohibited in express terms by section 3 of article 8 of the constitution.

11. The direction in the constitution that no county shall appropriate or pay any of the public funds to a school controlled by a church, involves the ascertainment of a fact. It must be ascertained by the county board whether the school applying for the appropriation or payment is or is not controlled by a church. The court can not assume in advance that the county board will ignore the real facts and violate the fundamental law by making illegal contracts or payments. It is time enough for a court of equity to interfere when the attempt is made to enforce the unconstitutional act.

22—144 Ill.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

This is a bill filed on January 12, 1889, in the Circuit Court of Cook county by Edward A. Stevens and John M. Stiles of the city of Chicago in said county in behalf of themselves as citizens and tax payers, and on behalf of all other citizens and tax payers who may choose to be made parties, against St. Mary's Training School, a corporation organized under the laws of Illinois, and its officers, the board of commissioners of Cook county and its members, and George R. Davis, the treasurer of Cook county, for the purpose of enjoining said school and its officers from setting up or prosecuting against said county any claim for aid or compensation for the subsistence, shelter, clothing, care or instruction of its wards or inmates, and from making any contract with said county with reference to such aid or compensation, and for the purpose of enjoining said board and its members and agents from approving or ordering paid any such claim and from making any such contract, and from doing anything to promote or abet the payment of any such aid or compensation or the making of any such contract, and for the purpose of enjoining said county treasurer from paying out of any public funds in his custody any sum of money whatever on any claim of said school, or for its aid, or for compensation to it for such subsistence, shelter, clothing, care or instruction. A preliminary injunction was granted in accordance with the prayer of the bill. A demurrer was filed to the bill by the training school and its officers, which was ordered to stand as the demurrer of all the defendants. The cause was heard upon said demurrer as the demurrer of all the defendants, and, upon such hearing, the Circuit Court dismissed the bill for want of equity. The present appeal is prosecuted from such decree of dismissal.

The bill alleges that said school, or corporation, and its officers propose and intend to procure out of the public funds of

the county money to aid it, and for its use and benefit; that said corporation is a school and institution under church control within the meaning of section 3 of article 8 of the constitution of this State; that said board and its members propose and intend to aid and abet the said intent of such church school by contracting to pay said moneys, and by approving quarterly its claims and ordering the same paid; that said treasurer intends to pay said approved claims; that said proposals and intentions involve violations of the public trusts reposed in said board and in said treasurer, in that the same are contrary to the form and effect of said constitutional provision; that said corporation was instituted and has been and is maintained as an instrumentality of the Roman Catholic Church; that one of its main purposes is to effectuate the religious objects of said church; that said church is provided with a most efficient organization and is able to sway its members in all matters involving their religion; that it deems itself specially and exclusively commissioned to teach religious truth; that it has an elaborate scheme of religious doctrines, whose acceptance its priests and adherents strive earnestly to promote; that its policy is to control the education of the young and to surround them with its influence; that said training school is governed and controlled, in accordance with said policy, by priests and laymen devoted to said church, zealous to promote its designs and obeying its wishes without dissent; that the consequence of sending a minor child to said school is to put him in training to become a Roman Catholic churchman; that the governing purpose to be effected by said school is to mould the inmates thereof as much as possible into Roman Catholic church, members; that no other teaching except that of said church is tolerated at said school, and all of the teachers are members and most of them ecclesiastics of that church; that for a number of years said board have contracted with said school for the reception into it of boys, sent there as provided by the "Act to provide for and to aid training schools for boys," approved

June 18, 1883, for their subsistence, clothing, shelter, instruction and training during their residence there, and for the payment to said school out of the public funds in the custody of the county treasurer various graded sums per month for each of said boys so sent; that by means thereof large sums of money have been misappropriated unwarrantably and in contempt of said constitutional provisions; that the most recent of said contracts expired by its terms on December 31, 1888; that, by a decision of the Supreme Court of Illinois, the members of said board and the officers of said school were well advised of the illegality of such misappropriation of the public funds and of such contracts in relation thereto, yet, in despite thereof, the said school, its officers and management, have presented for allowance to said board a claim in aid of said school pursuant to said contract, expiring December 31, 1888, and for the quarter at that date terminating, amounting to the sum of $2313, and have applied to said board to renew their contract on the old terms for another year; that complainants have been informed and believe that said board, unless enjoined therefrom, will affirm and order paid said claim of $2313, and renew said contract; that, from inquiry made and information acquired, complainants aver that members of said board in number sufficient to approve said claim and said contract, and to order the same paid and executed, "are already pledged in secret to the promoters of said claim and contract;" that said school refrains as much as possible from permitting its constitution, rules, by-laws and operation to be known, and secrecy governs the conduct of those interested in its management; that this reticence is observed for the reason that the real rules by which said school is administered could not be definitely expressed without manifesting the fact that said school has the character of a purely Roman Catholic institution; that, in the hope that said school may appear in the eyes of non-catholics as a non-sectarian institution, and for the purpose of obtaining in its aid payments out of the public funds the promoters of

said school pretend and claim that it has not a church or sectarian character, and that there is nothing in its charter that stamps it as such; that the control of said institution has been from the first and is intended to be in the care of those who have special favor for the Roman Catholic Church and its religious interests and will allow its wishes to govern their conduct in reference to said school; the bill prays, that all contracts of said school with reference to the payment to it out of any of the public funds of said county of any claim for aid or compensation for the subsistence, shelter, clothing, care or instruction of any of its wards or inmates, and especially the contract mentioned as expiring December 31, 1888, may be decreed and adjudged wholly void and of no binding effect, and that an injunction may issue against said school and its officers, said Board and its members, and said County Treasurer, enjoining them in manner and form as above stated.

Mr. Francis C. Russell, for the plaintiffs in error:

Municipal corporations are trustees in respect to the functions which they exercise. High on Injunctions (2d ed.), secs. 1236–1238; *Schumm* v. *Seymour,* 9 C. E. Greene, 343; *Sherlock* v. *Village of Winnetka,* 59 Ill. 398; Spence's Eq. Jur. 32–35.

Municipal corporations may be enjoined whenever it becomes necessary to prevent them from betraying the public trusts confided to them to the injury of private individuals. High on Injunctions (2d ed.), sec. 1236 *et seq.* and cases cited; Dillon on Mun. Corp. (2d ed.), secs. 727, 734–736; *Perry* v. *Kinnear,* 42 Ill. 160; *Beauchamp* v. *Kankakee Co.,* 45 id. 276; *Sherlock* v. *Village of Winnetka,* 59 id. 398; *Chestnutwood* v. *Hood,* 68 id. 132; *Springfield* v. *Edwards,* 84 id. 626; *Wright* v. *Bishop,* 88 id. 302; *Fitzgerald* v. *Harms,* 92 id. 372; *Board of Education of Galesburg* v. *Arnold,* 112 id. 11; *Browne* v. *Concord,* 56 N. H. 375; *English* v. *Smock,* 34 Ind. 115; *Smith* v. *Appleton,* 19 Wis. 468.

The illegal appropriation of public funds as well as the incurring of an illegal debt or liability by a municipal corporation may be enjoined at the instance of every tax payer. High on Injunctions, sec. 1236 *et seq.* and cases cited; *Perry* v. *Kinnear*, 42 Ill. 160; *Beauchamp* v. *Kankakee Co.*, 45 id. 274; *Chestnutwood* v. *Hood*, 68 id. 132; *Springfield* v. *Edwards*, 84 id. 626; *Wright* v. *Bishop*, 88 id. 302; *Board of Education of Galesburg* v. *Arnold*, 112 id. 11.

Mr. GEORGE W. SMITH, for defendants in error:

The bill is in every respect premature. When the county board shall have audited and allowed the claim, and when a warrant shall have been ordered to be drawn, it will be time enough to complain.

A court of equity will not interfere with the action of the county board, but may enjoin the performance of its contract if invalid. See *Chestnutwood* v. *Hood*, 68 Ill. 132; *Springfield* v. *Edwards*, 84 id. 626; *Wright* v. *Bishop*, 88 id. 302; *Fitzgerald* v. *Harms*, 92 id. 372; *Board of Education* v. *Galesburg*, 112 id. 11; *Brown* v. *Concord*, 56 N. H. 375; *Smith* v. *City of Appleton*, 19 Wis. 468; *Chicago* v. *Evans*, 24 Ill. 53; *Linden* v. *Case*, 46 Cal. 171; *Des Moines Gas Co.* v. *City of Des Moines*, 44 Iowa, 505.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The bill in this case was demurred to, and, therefore, its statements must be assumed to be true. It alleges, that the defendant in error, the Saint Mary's Training School, is a corporation which is controlled by the Roman Catholic Church; and that the Board of Commissioners of Cook County has made contracts with said corporation for the payment to it out of the funds of the county of certain monies for the instruction and training of boys committed to its care. That such contracts are void and such payments illegal is settled by the decision of this Court in *County of Cook* v. *Industrial School for Girls,*

125 Ill. 540. It was there held, that county boards in this State have no power to appropriate county funds in aid or support of sectarian schools, or of any school controlled by a church. The constitution of Illinois is very emphatic upon this subject, and the language, in which its meaning is expressed, is too plain to be misunderstood. Section 3 of Article 8 of that instrument is as follows : " Neither the General Assembly nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation or pay from any public fund whatever, anything in aid of any church or sectarian purpose, or to help support or sustain any school, academy, seminary, college, university, or other literary or scientific institution, controlled by any church or sectarian denomination whatever ; nor shall any grant or donation of land, money or other personal property ever be made by the State, or any such public corporation, to any church or for any sectarian purpose."

But the question presented by the record is, whether a court of chancery has power to enjoin a board of county commissioners from passing a resolution that an illegal contract be made by the county, and from making an order that an illegal claim be allowed against the county. The bill prays, that the county board may be enjoined from making contracts with the Training School in the future, and also from ordering the payment to said School of a balance due for the quarter ending December 31st, 1888, upon a contract already existing between the Board and the School. Has equity the power to enjoin the passage of ordinances, by-laws, resolutions and orders by municipal corporations, or is its power confined to the issuance of injunctions against the enforcement and execution of such ordinances, by-laws, resolutions and orders after the same have been passed ?

It is well settled, that courts of equity will not attempt to control the discretionary or legislative powers vested by law in municipal corporations. (2 Dill. on Mun. Corp. — 4th ed. — secs. 94, 475, 908 ; 2 High on Inj.— 3d ed.— secs. 1240, 1246).

Counties are corporations created for the purpose of convenient local government and possess only such powers as are conferred upon them by law. (*Harney* v. *The I. C. & D. R. R. Co.*, 22 Ind. 244). They have been called *quasi*-municipal corpora- tions; and their corporate powers are more limited than those of incorporated cities and towns. (1 Dill. on Mun. Corp. — 4th ed. — sec. 25; *Symonds* v. *Clay County*, 71 Ill. 355). In the exercise of such discretionary or legislative powers as are con- ferred upon them by law, counties are as much beyond judicial control as other municipal corporations. (*Fitzgerald* v. *Harms*, 92 Ill. 372).

The Board of Commissioners of Cook County can exercise the same powers as boards of supervisors in other counties. (*McCord* v. *Pike*, 121 Ill. 288). Each county has power to make all contracts and do all other acts in relation to the prop- erty and concerns of the county necessary to the exercise of its corporate powers; and each county board has power to manage the county funds and county business, and to examine and settle all accounts against the county. (*Fitzgerald* v. *Harms*, *supra*). Where county boards are acting within the boundaries of their discretionary or legislative powers, the courts will not only refrain from interfering with the passage of resolutions and orders by them, but will also refuse to enjoin the enforce- ment of such resolutions and orders, except in certain cases where they are unreasonable. In *Fitzgerald* v. *Harms*, *supra*, where we refused to sustain an injunction against the county clerk from issuing an order upon the county treasurer for the amount of a claim previously allowed by the county board and against the county treasurer from paying the same, we placed such refusal solely upon the ground that the board was acting within the bounds of the powers conferred upon it by law, and said : "a court of equity cannot interfere with the deliberations or the action of the board of commissioners over a matter which the law has entrusted to them, unless fraud be shown, or they have undertaken to allow a claim which was not of a character

to be paid by the county." Literally interpreted the language here used might be construed to mean, that a court of equity could interfere with the deliberations of the board, if its members were undertaking to allow a claim which was not of a character to be paid by the county. But the case cannot be regarded as so deciding, because the question of the power of a court of equity to enjoin the board from making an order by a vote of its members for the payment of a claim, as distinguished from its power to enjoin the clerk or auditor from drawing a warrant and the treasurer from paying the amount of the claim after the order of allowance had been made, was not involved nor in any way suggested.

It is correctly announced by the text writers in general terms, that tax-payers and property holders may resort to equity to restrain municipal corporations and their officers from making unauthorized appropriations of the corporate funds, and from misapplying the monies of the corporation, and from making payment of illegal claims. (2 Dill. on Mun. Corp.— 4 ed. — secs. 914, 919 ; Cooley on Taxation — 2 ed. — p. 764 ; 2 High on Inj. — 3 ed. — secs. 1237, 1238, 1239 ; 1 Pom. Eq. Jur. sec. 260 ; 10 Am. & Eng. En. of Law, p. 959). It is also correctly laid down as a general proposition, that the restrictions upon the right of a court of equity to interfere with the action of municipal bodies do not extend to cases where those bodies are exceeding their lawful powers. (2 High on Inj. — 3 ed. — sec. 1241).

But some of the adjudged cases, which are referred to as sustaining these general doctrines, are not in harmony with each other, and others of them are not definite and decided in their conclusions, upon the question whether equity will confine its restraining power to the instrumentalities which undertake to carry out and execute the unauthorized resolutions and ordinances of municipal corporations, or whether it will enjoin such corporations, acting in their corporate capacity, from adopting resolutions and ordinances which are in excess of their

legal or constitutional authority.   There are cases, which hold, or seem to hold, that, where a municipal corporation is about to pass a resolution or ordinance which is void as being *ultra vires,* a court of chancery will enjoin it from so doing.  Among such cases may be mentioned the following:   *Davis* v. *The Mayor, &c., of N. Y.,* 1 Duer, 451;   *The People* v. *Sturtevant,* 9 N. Y. 263;   *Davis* v. *The Mayor,* 14 N. Y. 506;  *Spring Valley Water- Works* v. *Bartlett,* 16 Fed. Rep. 615 ;  *Town of Jacksonport* v. *Watson,* 33 Ark. 704;  *The State* v. *Commissioners,* 39 Ohio St. 58;  *Page* v. *Allen,* 58 Pa. St. 338;  *Follmer* v. *Nuckolls County,* 6 Neb. 204 ;  *Peter* v. *Prettyman,* 62 Md. 566 ;  *Patton* v. *Stephens,* 14 Bush (Ky.), 324;  *Board of Education* v. *Arnold,* 112 Ill. 11 ;  *Spillman* v. *Parkersburg,* 35 W. Va. 605 ;  *The City of Valparaiso* v. *Gardner,* 97 Ind. 1;  *City of Springfield* v. *Edwards,* 84 Ill. 626;  *Howell* v. *City of Peoria,* 90 Ill. 104.

In none of the cases last above cited, except the first four, was the question now under consideration expressly passed upon, but the facts stated in the opinions seem to warrant the conclusion, that injunctions were sustained against the corporate action of the municipalities, as distinguished from the action of agents or officers proceeding under their orders.

In the New York cases it was held, that a court of chancery could enjoin the board of aldermen of a city from passing an ordinance to construct a railway in one of the streets; that municipal corporations are creatures of limited powers in the appropriation of the funds of the people; that, when they attempt to appropriate such funds to purposes not authorized by their charters or by positive law, whether it be done by resolution, ordinance or under the form of legislation, their acts are void, and that, while courts will not attempt to control their discretion, yet, if, under pretense of exercising such discretion, they threaten, or are about to do, what amounts to a gross abuse of power to the injury and in fraud of the rights of individuals and the public, the courts will interfere to pre-

vent the threatened injury. But later decisions in New York, some of which are referred to hereafter, have taken a different view, refusing to follow the earlier cases above mentioned as going too far in the direction of subjecting the legislative and political powers of municipal bodies to the control of the courts. (*Alpers* v. *City and Co. of S. F.*, 12 Sawyer's Rep. 631). In *Spring Valley Water-Works* v. *Bartlett, supra*, an injunction against the Mayor and Supervisors of San Francisco, restraining them from passing an ordinance to fix the price of water furnished to the city, was sustained over the objection, that the defendants were a "legislative body endowed with legislative powers, to be exercised with absolute discretion;" and it was held, that the board of supervisors of a municipal corporation will be enjoined from passing an ordinance which is not within the scope of their powers, where its passage will work an irreparable injury. The *Bartlett* case, however, seems to have been overruled by the later case of *Alpers* v. *City and Co. of S. F., supra*.

The last four cases above cited, to-wit: *Spillman* v. *Parkersburg*, *The City of Valparaiso* v. *Gardner*, *City of Springfield* v. *Edwards* and *Howell* v. *City of Peoria*, are cases where cities were enjoined from incurring indebtedness in excess of the constitutional limit, or from entering into contracts that would involve such excess of indebtedness. But in these cases the point to which attention was more especially directed, was the meaning of the word "indebtedness," and what constituted a "debt" within the meaning of the constitution; and it is not altogether clear, that "incurring indebtedness" does not refer as well to the enforcement as to the passage of corporate resolutions.

A large number of the decisions, which uphold the right of equity to interfere with the action of municipal corporations where such action is in excess of their legal powers, will be found, on examination, to be based upon facts which show, that the injunctions were issued against the officers or agents

attempting to execute or enforce corporate resolutions, ordinances, by-laws or orders, as will be seen by reference to the following cases: *New London* v. *Brainard*, 22 Conn. 553 ; *Webster* v. *Town of Harwinton*, 32 Conn. 131 ; *Bayle* v. *New Orleans*, 23 Fed. Rep. 843 ; *Harney* v. *The I. C. & D. R. R. Co., supra ; Davenport* v. *Kleinschmidt*, 6 Mont. 502 ; *Willard* v. *Comstock*, 58 Wis. 565 ; *Lynch* v. *E. L. & M. Ry. Co.*, 57 Wis. 430 ; *Place* v. *City of Providence*, 12 R. I. 1 ; *Austin* v. *Coggeshall*, 12 R. I. 329 ; *Sherman* v. *Carr*, 8 R. I. 431 ; *Newmeyer* v. *Mo. & Miss. R. R. Co.*, 52 Mo. 81 ; *Osterhout* v. *Hyland*, 27 Hun, 167 ; *Mayor, etc., of Baltimore* v. *Gill*, 31 Md. 375 ; *Merrill* v. *Plainfield*, 45 N. H. 126 ; *Hospers* v. *Wyatt*, 63 Iowa, 264 ; *Roberts* v. *Mayor, etc., of N. Y.*, 5 Abb. Pr. Rep. 41 ; *Schumm* v. *Seymour*, 9 C. E. Greene (N. J.), 143 ; *List* v. *Wheeling*, 7 W. Va. 501 ; *Rutz* v. *Calhoun*, 100 Iowa, 392 ; *McCord* v. *Pike*, 121 Ill. 288 ; *English* v. *Smock*, 34 Ind. 115 ; *The City of Madison* v. *Smith*, 83 Ind. 502 ; *Sackett* v. *The City of New Albany*, 88 Ind. 473 ; *Wright* v. *Bishop*, 88 Ill. 302 ; *Sherlock* v. *Village of Winnetka*, 59 Ill. 389 ; *Crampton* v. *Zabriskie*, 101 U. S. 601.

In the case of *Crampton* v. *Zabriskie, supra*, which may be regarded as a leading case upon this general subject, Mr. Justice FIELD uses the following language : " Of the right of resident tax-payers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt, which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question.    *    *    *    From the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity of prompt action to prevent immediate injuries, it would seem eminently proper for courts of equity to interfere upon the application of the tax-payers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders ; "

but the facts of the case, in the decision of which this language was used, show that the legislative action of the county board had already been put forth in all essential respects before the injunction was asked for; there, the board of Chosen Free-holders of a county in New Jersey had purchased certain lands without legal authority to do so, and had issued bonds in pay-ment for the same; and the object of the injunction, as is stated in the opinion of the court, was " to enjoin the prosecution of the action to enforce their payment " by the holder of the bonds.

In *Colton* v. *Hanchett*, 13 Ill. 615, it was held that the board of supervisors of a county had no authority to appropriate the county funds to aid a private individual in the construction of a toll-bridge, and that an injunction would issue at the suit of a tax-payer to restrain the board from granting a sum of money to a private individual for such purpose; but it appears from the statement of the facts in the case, that the board had previously passed a resolution directing, that an order should be drawn upon the county treasurer for the money, to-wit: $1000.00, in favor of such individual, upon his completion of the bridge, and upon his conveying to the county a right of way over the bridge for certain of its officers.

In *Perry Co.* v. *Kinnear*, 42 Ill. 160, the county board made an appropriation to pay to a judge of the Circuit Court money in addition to the salary allowed him by law; and it was held that such appropriation of the money of the citizens was illegal and would be enjoined by a court of equity at the suit of tax-payers; but, before the injunction was applied for, the board had passed a resolution ordering the county clerk to issue an order on the treasurer in favor of the judge, and the injunction was against the county clerk from issuing the order and the county treasurer from paying it. In *Beauchamp* v. *Kankakee Co.*, 45 Ill. 274, the facts were similar to those in the *Perry Co.* case, and the ruling was the same.

In *Carter* v. *City of Chicago*, 57 Ill. 283, where the question was whether a city could be enjoined from so constructing a

roadway as to include in it the portion of land set apart in the plat for sidewalks on either side of the roadway, it was held that the city held the fee of the streets in trust for the public, and would be enjoined from a violation of such trust by such an abuse of its powers as to injure the property of individuals; but the injunction there issued was against the enforcement of an ordinance which had already been passed.

In *Sherlock* v. *Village of Winnetka, supra*, where it was held that, although a municipal corporation was vested with the largest discretion in the exercise of its public and political powers, yet it must be regarded as the depositary of a trust in reference to the corporate property, and, if guilty of a breach of such trust, would not be exempt from judicial interference merely because the forms of legislation were used; it appears that the injunction was mainly directed against the collection of a tax, the levy of which had been ordered in an ordinance theretofore passed by the village council. (*Milhau* v. *Sharp*, 15 Barb. 193).

But we are not limited, in the investigation of this subject, to an examination of the facts of the cases, which, while sustaining the general power of equity to restrain the action of municipal bodies, do not make any special reference to the mode of exercising such power. There are many decisions which hold, in express and definite terms, that " the courts will not enjoin the passage of unauthorized ordinances, and will ordinarily act only when steps are taken to make them available." (1 Dill. on Mun. Corp. — 4 ed. — sec. 308, note on page 387). There may be instances where this restriction upon the power of the courts will sometimes be disregarded, as where municipal corporations are exercising mere business or ministerial, rather than legislative, powers, (*The City of Valparaiso* v. *Gardner, supra;* 1 Dill. on Mun. Corp.— 4 ed. — secs. 473, 474, 927, 1048); or are wrongfully disposing of property held by them as trustees for the public, (*Milhau* v. *Sharp, supra; Sherlock* v. *Village of Winnetka, supra*); or

are attempting to act upon matters not by their charters or by the law subject to their jurisdiction, (*Alpers* v. *City and Co. of S. F., supra*) ; or where it appears that the mere voting on and formal passage of a resolution or ordinance will instantly, without any action or attempt to enforce any right or privilege under it, effect an irremediable private injury. ( *Whitney* v. *The Mayor, &c., of N. Y.,* 28 Barb. 233).

The weight of authority and the tendency of the more recent decisions are in favor of the position, that the restraining power of the courts should be directed against the enforcement, rather than the passage, of unauthorized orders and resolutions, or ordinances, by municipal corporations. To this effect are the following authorities : *The Des Moines Gas Co.* v. *The City of Des Moines,* 44 Iowa, 505 ; *Linden* v. *Case,* 46 Cal. 171; *Merriam* v. *Board of Supervisors,* 72 Cal. 517 ; *City of Chicago* v. *Evans,* 24 Ill. 52 ; *Whitney* v. *Mayor,* 28 Barb. 233 ; *People* v. *Mayor,* 32 Barb. 35 ; *People* v. *Mayor,* 9 Abb. Pr. Rep. 253 ; *Cin. Street R. R. Co.* v. *Smith,* 29 Ohio St. 291 ; *Harrison* v. *City of New Orleans,* 33 La. Ann. 222 ; *Alpers* v. *San Francisco,* 12 Sawy. 631; 2 High on Inj. sec. 1243 — 3d ed.

In *Alpers* v. *San Francisco, supra,* Mr. Justice FIELD, who wrote the opinion in *Crampton* v. *Zabriskie, supra,* says : " If by either body, the legislature or the board of supervisors, an unconstitutional act be passed, its enforcement may be arrested. The parties seeking to execute the invalid act can be reached by the courts, while the legislative body of the State, or of the municipality, in the exercise of its legislative discretion, is beyond their jurisdiction. The fact that in either case the legislative action threatened may be in disregard of constitutional restraints and impair the obligation of a contract, * * does not affect the question. It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised is not subject to interference by the judiciary. * * * The principle, that the exercise of legislative

power by a municipal body is beyond judicial control is too important in our institutions to be weakened by occasional decisions in disregard of it."

In *The Des Moines Gas Co.* v. *The City of Des Moines, supra,* where the city of Des Moines had chartered a gas company with certain exclusive privileges and attempted by a subsequent ordinance to repeal said charter and grant the same privileges to another company, it was sought to enjoin the passage of the repealing ordinance, on the ground that it would be a violation of the contract created by the charter, and therefore unconstitutional; but it was held that the court had no power to issue the injunction under the circumstances, and it is there said: " The General Assembly is a co-ordinate branch of the State government, and so is the law-making power of public municipal corporations within the prescribed limits. It is no more competent for the judiciary to interfere with the legislative acts of the one than the other. But the unconstitutional acts of either may be annulled. Certainly the passage of an unconstitutional law by the General Assembly could not be enjoined. If so, under the pretense that any proposed law was of that character, the judiciary could arrest the wheels of legislation. * * * After its passage the judiciary may declare the law unconstitutional. *Piqua Bank* v. *Knoop,* 16 How. 369; *Dodge* v. *Woolsey,* 18 How. 331, but previous to that time judicial powers cannot be invoked. * * * A void law is no law, and this without doubt is true as to an ordinance. * * * While it is not the province of the judiciary to interfere and arrest the passage of the ordinance, yet the doors are open for the purpose of testing its legality."

In *Linden* v. *Case, supra,* it was held, that an injunction will not be granted to restrain a Board of Supervisors from contracting a liability, which is not a legal charge against the county, or "from allowing any accounts against the county thereon", the Supreme Court of California saying: " No order made by a Board of Supervisors is valid or binding

unless it is authorized by law. No claim against a county can be allowed, unless it be legally chargeable to the county; and if claims not legally chargeable to the county are allowed, neither the allowance nor the warrants drawn therefor create any legal liabilities. * * * If illegal claims are allowed by the Board against the County, it will be the duty of the auditor to refuse to draw warrants therefor; and, if warrants are drawn, it will be the duty of the Treasurer to refuse to pay them. The presumption is that these officers will faithfully discharge their duty in the premises."

In the more recent case of *Merriam* v. *Board of Supervisors, supra,* decided in 1887, it was held that an injunction would not lie at the instance of a tax-payer to restrain the Board of Supervisors of a county from ordering certain claims to be paid on the ground that they were not proper or valid demands against the county, and it was there said : " The members of the Board would themselves be individually responsible for moneys willfully paid out without authority of law. They are trustees of the funds for certain specified purposes, and cannot, except by violating their oaths, allow them to be applied to other purposes. They act judicially, it is true, and will not be held accountable for mere errors, but they will not be excused on the ground that they have acted honestly merely because they do not steal the funds. If they willfully appropriate moneys for a purpose not authorized by positive law, they are liable civilly and criminally."

In *City of Chicago* v. *Evans, supra,* a bill was filed to enjoin the common council of Chicago from passing an ordinance, granting to the North Chicago City Railway Company the right to construct a railway across the Clark street bridge &c., and we said in that case : " The procuring the adoption of this ordinance is not such an illegal and unwarranted act as can produce injury, and until they act under it as their only warrant, no reason is perceived why they should be stayed in their action. The passage of ordinances which confer no

rights or authority, are harmless until steps are taken to make them available."

Our survey of the authorities leads us to the conclusion that, in the case at bar, the application for an injunction was premature. If the Board of Commissioners had passed a resolution to make a new contract with the appellee, or had made an order directing the payment of the balance due on the old contract, and the appellants had filed a bill to prevent the mandates of the board from being carried into effect by enjoining the clerk or auditor of the board from drawing a warrant on the county treasurer and by enjoining the county treasurer from paying such warrant, or by enjoining such other steps as might be taken to enforce the action of the board, then a very different case would have been presented for our consideration.

The direction, that no county shall appropriate or pay any of the public funds to a school controlled by a church, involves the ascertainment of a fact. It must be ascertained by the county board, whether the school applying for the appropriation or payment is or is not controlled by a church. A court of chancery cannot assume in advance, that the board of county commissioners will ignore the real facts, and violate the fundamental law of the State by making illegal contracts, or illegal appropriations. It is time enough for equity to stretch forth its preventive arm, when some attempt is made to enforce the unconstitutional act. A municipal corporation, which has entered into a void contract, cannot be estopped from taking advantage of its own incapacity when suit is brought upon such contract, or other efforts are made to secure its execution. (*Austin* v. *Coggeshall, supra ; Schumm* v. *Seymour, supra*).

There is nothing in the bill to show, that there would have been any haste in drawing a warrant upon the county treasurer, or in obtaining payment from him, if the order allowing appellee's claim had been made by the Board. It does not appear, that the remedy of appellants would not have been as effective

against the instrumentalities attempting to carry out the mandate of the Board as against the corporate body itself. While the legislative power, which has been delegated to municipal corporations, is of a limited and subordinate character, it yet remains true, that judicial interference with it is fraught with ·serious consequences, and cannot be too carefully avoided.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*