EDWARD ROBY

*v.*

THE CITY OF CHICAGO.

*Opinion filed June 23, 1905.*

1: MUNICIPAL CORPORATIONS—*when tax-payer cannot maintain bill against city.* A tax-payer cannot maintain a bill in equity to compel the city to defend a suit against it in the manner in which the complainant believes is correct rather than in the manner which the law department of the city has elected to pursue, there being no question of bad faith on the part of the city.

2. SAME—*court will not enjoin exercise of legislative power by city.* A court of equity will not restrain the exercise of legislative power by a city, such as the passage of a street railway ordinance, but will direct its restraining power against the enforcement of ordinances or contracts if ground therefor exists.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

This is a bill in chancery filed by the appellant, Edward Roby, as a citizen, resident and tax-payer of the city of Chicago, in the circuit court of Cook county, against the city of Chicago, in which it is averred that the public streets of said city are unlawfully occupied by certain street railways; that the corporations operating said street railways collect annually large sums of money as fares from the persons riding on their street cars which of right belong to said city and ought to be used to pay its expenses and appropriations, to the relief of complainant and other tax-payers, and that the city, by permitting said sums of money to be collected and used other than for its own benefit, has committed a breach of the trust whereby it holds the title to said streets, to the damage of the complainant and other tax-payers *cestuis que trust* of said city. It is also averred that the corporations that collect said fares and divert the same from their proper use claim the right so to do by virtue of certain acts passed by the legislature of the State of Illinois in 1859, 1861 and

1865, which purport to incorporate and to extend the franchises of the said railway companies operating said street railways in said streets, which acts of the legislature, it is said, are unconstitutional and void; that in the year 1903 one Govin and others, as receivers of the Chicago Union Traction Company, appointed by the Circuit Court of the United States for the Northern District of Illinois, exhibited their two bills in said court against the city of Chicago, wherein it was charged said acts of the legislature constituted valid contracts between the street railway companies operating street railways in the streets of said city and the State, and prayed that said acts might be established as valid enactments and held to be contracts between the State and said corporations; that the city of Chicago, by its executive officers, answered said bills, neither admitting nor denying the validity of the acts of 1859 and 1861, and alleging that if construed according to the contention of the complainants the act of 1865 was unconstitutional; that the Circuit Court of the United States, on June 1, 1904, rendered an opinion holding said acts of the legislature to be valid enactments, and that said street railway companies had vested rights in certain streets of the city of Chicago, and that a decree is in course of preparation by counsel for the receivers and the corporation counsel which gives away the rights of the city of the value of $100,000,000; that the city council and certain persons who represent one or more of said street railway companies are negotiating for settlement of matters in difference between the city and said street railway companies; that said negotiations are being carried on upon the basis that said acts of the legislature are valid enactments, and that said street railway corporations have vested rights, by reason thereof, in certain of the streets of the city of Chicago, and that unless an injunction issue as prayed for, the interests of the city will be sacrificed.

The bill prays for an injunction forbidding the city, its mayor, corporation counsel, city council, and all its officers

and agents, (1) to admit in any form that said supposed
acts, or either of them, are laws of the State of Illinois or
constitute contracts affecting the property rights of the city
or revenue to be collected from the use of streets, or any of
them; (2) to allow any decree to be entered against the city
in said causes without a full and fair presentation of the in-
validity of said acts, and each of them, so that the court shall
fully and advisedly give its judgment thereon, and so that
in case any such decree should be adverse to the city the in-
validity of said supposed laws may be fully presented and
tried and decided by the Appellate and Supreme Courts of
the United States; (3) to pass any ordinance or make any
contract acknowledging that either of said supposed acts is
valid or accepting any claim or supposed right under them,
or either of them, as a consideration for any grant of any
right, interest or property whatever; (4) a general prayer
for relief.

The city filed an answer and the case was heard upon
bill and answer, and a decree was entered dismissing the
bill for want of equity, and an appeal has been prosecuted
to this court.

EDWARD ROBY, *pro se.*

EDGAR BRONSON TOLMAN, Corporation Counsel, and
WILLIAM H. SEXTON, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The bill in this case was filed against the city of Chicago
for the purpose of having the circuit court direct the law-
officers of said city what defense they shall interpose upon
behalf of the city in certain suits brought in the Circuit Court
of the United States against said city, involving the validity
of the franchises of certain street railway companies to op-
erate street railroads in certain of the streets of said city.

The city of Chicago has a law department, which is
charged with the duty of representing said city in court in

all suits at law, in equity or otherwise, which may be brought
against it, and for·a court of chancery, upon a bill filed for
that purpose, to undertake to determine, at the suit of a tax-
payer, what defense should be interposed in suits brought
against the city, would be to usurp the functions of the law
department of the city and would lead to hopeless and end-
less confusion.  If one tax-payer may file such a bill then
every tax-payer may, and if such a bill can be maintained in
this case then a similar bill can be maintained in every case
where there is a suit in court and the city is a defendant.  The
city, in its answer, denied that it admitted in the suits com-
menced against it in the United States Circuit Court that
the said acts of 1859, 1861 and 1865, or either of them, were
valid enactments or constituted a contract affecting the prop-
erty rights of the city or its revenue, and averred that it does
not now, and never did, intend to allow a decree to be entered
against the city in said cases without a full and fair presenta-
tion of the validity of said acts, and each of them, so that the
court should fully and advisedly give its judgment thereon,
and so that in case any such decree should be adverse to the
city the invalidity of said supposed laws may be fully pre-
sented and tried and determined by the Appellate and Su-
preme Courts of the United States.  These averments are
not denied and must be taken as true.  The contention, there-
fore, between the appellant and the city is narrowed to this :
that the appellant and the law officers of the city differ as to
the most effectual manner of defending said suits on behalf
of the city in the United States Circuit Court, and the appel-
lant asks the court to decide that his theory of the defense
of said suits is correct and require the law officers of the city
to proceed with the defense of said actions in accordance
with the view of appellant.  In the litigation in the United
States Circuit Court, the same as in this case and all others,
the city must be represented by its law officers, and they
must be permitted, without interference from the courts, by
injunction or otherwise, to represent the city in such manner

as in their judgment will best subserve and protect its interests. If the people of Chicago are not satisfied with the manner in which their interests are protected by the law department of that city, the law has pointed out a method whereby they may change that department; but each citizen, resident and tax-payer cannot go into a court of chancery and obtain a decree commanding said law department what sort of a defense it shall interpose in the numerous actions which may be brought against the city, every time the city is sued.

It is also clear that the bill is without equity in so far as it attempts to enjoin the city council from passing any ordinance or making any contract with reference to the use of the streets of Chicago for street railway purposes, which recognizes in any way the validity of said acts, or either of them. The city council, under the general Incorporation act, which is in force in the city of Chicago, has full power to pass an ordinance granting to a street railway company the right to operate its street railroad in the streets of the city, subject to such limitations as have been imposed upon such municipalities by the legislature, and in so doing may prescribe the terms and conditions upon which such company may occupy the streets of the city with its tracks, cars, etc. The city, in passing such an ordinance, performs a legislative function, and in so doing acts as a governmental agency of the State, and the ordinance, when passed, has the force and effect of a law of the State. In *People* v. *Suburban Railroad Co.* 178 Ill. 594, on page 605, it is said: "The State does not, however, exercise directly that full paramount power which it possesses over streets, alleys, etc., but in the distribution of governmental powers the General Assembly adopted the policy of selecting the cities and villages of the State as governmental agencies and delegating to such municipalities the power to regulate and control the use of the streets, alleys, etc., within their respective limits. Such power thus delegated is exercised by the municipal au-

thorities acting in behalf of the State for the benefit of the public." The general rule is, that a court of chancery will not enjoin the exercise by a city council of a legislative power, such as the granting of a street railway ordinance. (*Stevens* v. *St. Mary's Training School,* 144 Ill. 336; *Dickey* v. *Reed,* 78 id. 261; *State* v. *Superior Court of Milwaukee County,* 48 L. R. A. 819.) Cases may be found where a county or city has been enjoined from wrongfully disposing of the property or funds of the municipality. Those cases, however, on examination will be found to be cases in which the municipality controlled the property or fund in its proprietary capacity, for the benefit of the citizen, (*McCord* v. *Pike,* 121 Ill. 288; *City of Mt. Carmel* v. *Shaw,* 155 id. 37;) and not in its governmental capacity, as an agency for the State, under specific powers defined by the legislature, for the benefit of the public at large. The courts generally exercise their restraining power against the enforcement, rather than the passage, of unauthorized contracts, resolutions or ordinances by municipal corporations. *Stevens* v. *St. Mary's Training School, supra.*

The appellant has devoted a large portion of his brief to a discussion of the constitutionality of the acts hereinbefore referred to. From the view, however, we take of the case, it is not necessary that the question of the constitutionality of those acts be now determined. If contracts were made or ordinances passed by virtue of said legislation which affect the property rights of the complainant and other tax-payers of the city, and the street railway companies attempt to occupy the streets of the city by reason thereof, it will then be time enough to pass upon the question whether or not the city has the power to make such contracts or pass such ordinances under and by virtue of said legislation. In *Stevens* v. *St. Mary's Training School, supra,* on page 351, the court, after an exhaustive review of the authorities, said: "The weight of authority and the tendency of the more recent decisions are in favor of the position that the restraining power

215—39

of the courts should be directed against the enforcement, rather than the passage, of unauthorized orders and resolutions, or ordinances, by municipal corporations."

Finding no reversible error in this record the decree of the circuit court will be affirmed. *Decree affirmed.*