DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1924.

---

### Fidelity Investment Association, Appellee, v. Louis L. Emmerson, Secretary of State, Appellant.

### Gen. No. 7,764.

1. FOREIGN CORPORATIONS—*estoppel to question that licensed sale of securities is subject to Securities Act.* A corporation organized under the laws of another State and licensed to do business in this State, which has applied to the Secretary of State for permission to transact the business of selling its investment contracts and procured such permission is not in a position to question that its right to transact such business is subject to the provisions of the Securities Act, Cahill's Ill. St. ch. 32, ¶ 254 *et seq.*

2. INJUNCTIONS—*when bill to enjoin Secretary of State from interfering with sale of securities insufficient.* Where a bill of complaint seeking to enjoin the Secretary of State from in any manner preventing complainant corporation from selling its special income contracts in the State states no facts from which an inference could be drawn that the Secretary of State acted fraudulently, wrongfully or arbitrarily in canceling complainant's permit to do such business or that his act was beyond the powers conferred upon him by the Securities Act, Cahill's Ill. St. ch. 32, ¶ 254 *et seq.*, it furnishes no legal basis for the exercise of equity jurisdiction nor legal right to interfere by injunction with the official discretion of the Secretary of State, exercised in good faith in the line of duty.

3. CORPORATIONS—*remedy for cancellation by Secretary of State of permit to sell securities.* Under the Securities Act, Cahill's Ill. St. ch. 32, ¶ 254, *et seq.*, which is the source of a foreign corporation's permission to do business in the State, a remedy is provided if such corporation feels aggrieved by the action of the Secretary of State in canceling its permit to sell a certain form of investment contract in the State by having his action reviewed by the circuit court of Sangamon county and such remedy must be pursued, there being no occasion for the intervention of a court of equity by way of injunction.

Appeal by defendant from the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the April term, 1924. Reversed. Opinion filed July 5, 1924. Rehearing denied October 7, 1924.

EDWARD J. BRUNDAGE, for appellant; CLARENCE N. BOORD, JAMES W. GULLETT and MORTIMER C. GROVER, of counsel.

GOOD, CHILDS, BOBB & WESTCOTT, BROWN, HAY & STEPHENS and ELMER D. BROTHERS, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case the Fidelity Investment Association, a West Virginia corporation, doing business in this State, in the negotiation and the sale of what is known and herein referred to as "Special Income Contracts" for investment of money, filed a bill in equity in the circuit court of Sangamon county for an injunction to restrain the Secretary of State, Louis L. Emmerson, from interfering with the transaction of its business in the State. The bill contains the following allegations:

That complainant, Fidelity Investment Association, is a corporation organized under the laws of West Virginia, April 13, 1911, having among other powers the following:

"To purchase, acquire, buy, sell, own, hold, dispose of, and deal in stocks, bonds, mortgages, debentures,

obligations and other securities of corporations and persons for its own account, and for others on commission; to loan money on real estate security; to loan money on personal and other security;  *   *   * to transact any other business incident to any of the above named enterprises which a person, firm or partnership might engage in and do;

"To carry on by purchasing existing business, or otherwise, the business of soliciting or receiving deposits or payments on any annuity contracts, certificates or annuity bonds, in fixed and stipulated instalments, or otherwise; to acquire and sell, and offer for sale or delivery, any contract, certificate or bond of any person, association or corporation now or hereafter engaged in this State in the business of soliciting or receiving deposits or payments of any kind of annuity contracts, certificates or annuity bonds; and further to engage in the business of placing or selling certificates, bonds, debentures, certificates of interest or investment securities of any kind on the partial payment, instalment, or any other plan of payment, and providing for the sale redemption or retiring of the same, or any part thereof, and generally to carry on all lawful business necessary or incidental to all or any of the above mentioned objects."

Sets forth also that under charter provisions the corporation has power to establish branch offices in other States.

Sets forth laws of West Virginia regulating business in which said company is engaged, authorizing soliciting or receiving deposits or payments on annuity contracts, certificates or bonds in fixed and stipulated instalments without first having obtained from the Insurance Commissioner a permit to do business in that State, provided, that before such permission to transact business in that State shall be issued, the corporation shall deposit for the benefit of its contract holders bonds and securities approved by the Insurance Commissioner to the amount of $100,000, and shall maintain at all times that a deposit to an

amount equal to 100 per cent of the liability on all outstanding contracts.

Alleges compliance with aforesaid provisions and all other provisions of the laws of West Virginia regarding the business of appellee. That said company was authorized and admitted to do business in the State of Illinois under the General Corporation Law of said State relating to foreign corporations on March 8, 1915, as shown by copy of charter marked Exhibit "B," which said charter (license) empowers said company, among other things, to transact the following business in the State of Illinois:

"To purchase, acquire, buy, sell, own, hold, dispose of and deal in stocks, bonds, mortgages, debentures, obligations and other securities of corporations and persons for its own account and for others on commission; * * * to underwrite, in whole or in part, any issue of stocks, bonds or other securities; to do a general brokerage and commission business; to buy, sell and otherwise deal in bonds and other corporate securities and obligations of any and all kinds, including public obligations payable out of the proceeds of taxation, and the securities and obligations of any government, state, municipality, or other governing or tax body, and of any corporation, quasi-public, private, domestic or foreign; * * * to make, sell and deliver the negotiable, coupon-bearing or registered promises of the corporation to pay specific sums of money on specific dates, and to pledge its property and assets in payment thereof, not to include the business of real estate, brokerage, or the buying and dealing in commercial paper in the exercise of the function of bank discount, and all the transactions in corporate stocks to be by this corporation as agent, and not as principal."

That it has been continuously engaged in the transaction of its corporate business in the State of West Virginia and in sundry other States and the District of Columbia since the said date of its organization.

Sets forth that the corporation made application to

the Secretary of State of Illinois under the Illinois Securities Law, approved June 10, 1919 [Cahill's Ill. St. ch. 32, ¶ 254 *et seq.*], during the month of July of said year, and procured a permit in accordance with said law, as amended, to continue the sale of its contracts as a class "C" security; that it has paid its annual franchise taxes to the Secretary of State who has accepted and retained the same.

That no change has been made in said contract issued by said company since January, 1921; that all changes theretofore made were in favor of the holder of said contract, which changes received the approval of the Secretary of State; that said company is solvent and able to meet all of its obligations and that there have been no changes in its conditions whereby the further sale, issue and delivery of sums due on its special income contract will work or tend to work a fraud upon the people or any holder or prospective holder thereof.

That business of appellee does not come within spirit or letter of the Securities Law of Illinois.

That on March 6, 1924, Secretary of State signed a "pretended" order of cancellation of said company's authority to sell its contracts within the State of Illinois, a copy of which order is attached to bill of complaint, as Exhibit "C."

That copy of special income contract, approved by Secretary of State, is thereto attached as Exhibit "D."

That the Secretary of State threatens to prevent said company from further sale and negotiation of its said contracts within the State of Illinois prior to the review of said order of cancellation as provided by law, and that said Secretary of State will carry his said threat into execution unless restrained by order and injunction of the court below, until said "alleged" order of cancellation can be reviewed by the court as provided by law and the rights of said company determined.

That said company has developed a large and efficient sales force in Chicago, Illinois, and that if the threats of appellant are carried into execution, the holders of said contracts within the State of Illinois and in other parts of the United States "will be caused anxiety and unrest, and that said company's business will be disorganized, disrupted and destroyed," to the irreparable injury and damage of it.

The specific prayer of the bill is for an injunction to restrain the appellant, Louis L. Emmerson, as Secretary of State, from in any manner interfering with or preventing the appellee from the further sale and negotiation of its special income contracts in the State of Illinois, until the further order of the court. The order of the Secretary of State, canceling the appellee's license to sell the contracts referred to in the State, is as follows:

"State of Illinois
Office of the Secretary of State

File Case No. 21.
{ In the Matter of the Application of the Fidelity Investment Association, for Authority to Sell Securities in the State of Illinois.

Order.

"Be it Remembered that pursuant to paragraph two (2) section twenty-four (24) of the Illinois Securities Law, approved and in force June 10, 1919, as amended by an Act approved June 11, 1921, on the twelfth day of November, A. D. 1923, due notice was given to the said Fidelity Investment Association to show cause on or before the twenty-second day of November, A. D. 1923 why permission to sell the securities of the said Fidelity Investment Association in the State of Illinois should not be cancelled, and pursuant to said notice to show cause the aforesaid Fidelity Investment Association appeared before the Secretary of State at various times and submitted various forms of investment contracts and other statements, and

"Whereas, examination and consideration of the various documents and statements submitted by the

said Fidelity Investment Association was made by the Secretary of State and from such examination and consideration the Secretary of State finds as follows:

"(1)    The application of the Fidelity Investment Association was among the first to be presented in the administration of the present Illinois Securities Law, it being filed on the twenty-fifth day of July, A. D. 1919, and the provisions of the investment contract submitted and in use escaped the attention of and consideration of the members of the Securities Department;

"(2)    Numerous, apparently justifiable complaints of 'One Call System' methods of sale have been received, also such acts as showing bank bills bearing the name of W. B. Irvine, the president of the said Fidelity Investment Association, for the purpose of impressing the prospective investor with the thought that the investment was either in a bank or in a company as good as a bank, thereby giving it an air of banking;

"(3)    The investment contract is indefinite, ambiguous and not susceptible to interpretation by the ordinary purchaser of such contracts, and does not make a full and complete disclosure of all the conditions in such a way that the ordinary purchaser can understand said contract;

"(4)    The agencies in control so manipulate the business that the investor who makes payment for ten and one-half years, to maturity of contract, paying in One Thousand Three Hundred Twenty ($1,320.00) Dollars, and receiving only One Thousand Five Hundred Thirty-six ($1,536.00) Dollars at the end of said period not only approximately four per cent, simple interest, while standard securities of the country yield investors six to seven per cent, payable quarterly, and not at the end of ten and one-half years;

"(5)    In the proposed modified form of contract no withdrawal value is provided for those unable to carry or make the payments until the initial and twelve monthly payments have been made, and the surrender privileges allowed, where the contract has

been carried one year, gives the investor less than one-half of the money actually paid by him; i. e., on a contract where One Hundred Eighty ($180.00) Dollars has been paid in at the end of one year, a cash surrender value of Eighty-eight ($88.00) Dollars may be taken, but the investor must wait three months to receive this amount;

"(6)  Investors unable to carry or make payments one year or over have no cash surrender or loan privi‑ leges whatever, these payments lapse and the unfortunate lose all the payments made;

"(7)  It appears that the lapsed payments, less expenses incurred, are placed in the reserve account of the company and a substantial profit must accrue from this source; also the fiscal agents receive a considerable amount of each application regardless of whether the investors are able to continue their monthly payments and further, the amount paid the fiscal agency appears excessive and absorbs an undue portion of the profits;

"(8)  It is not at all likely that many persons would invest if the contract was simple and plain and fully understood by the purchasers, and a security which is so worded, phrased and cleverly drawn that it is not and cannot be readily understood by the investor is not a fit security to be offered generally and to persons not skilled in construing such complex and complicated instruments;

"(9)  Numerous hearings and conferences on the subject have been held at which counsel and the officers of the company presented fully the contention and position of the company, but the modified form of investment contract presented is not different in principal from the contract as formerly and now used, and as it does not eliminate lapses or forfeitures it is objectionable and offends against fair dealing, although the degree is to some extent lessened, as the former contract provided merely a loan privilege at the end of two years;

"(10)  The plan provided for the forfeiture of payments under certain conditions, and provides for a loss in the event of surrender before maturity, con‑

trary to public policy and to the established legis-
lative policy of this state; and

"IT IS THEREFORE the opinion and holding of the
Secretary of State that further sales under the au-
thority heretofore granted under the present, or if
made under the proposed modified form of contract,
would work or tend to work fraud upon purchasers
within the meaning of Section 17 of the Illinois Se-
curities Law, and the right to make further sales is
hereby terminated and cancelled.

(SEAL) In Testimony Thereof, I have set my
hand and caused to be affixed the
Great Seal of the State of Illinois.
Done at the City of Springfield, this
Sixth day of March, A. D. 1924.
Louis L. Emmerson,
Secretary of State."

An order was entered upon the bill of complaint
granting the injunction prayed for, and this appeal is
prosecuted from the interlocutory order.

The questions presented on appeal involved the
power and authority of the Secretary of State under
the "Illinois Securities Law" and the jurisdiction
of a court of equity to intervene.  The appellee, in-
cidently, also raises the question that the business
it is authorized to transact under its charter does not
come within the spirit or letter of the Securities Law.
It is sufficient to say, with reference to the latter con-
tention, that section 2 of the Act referred to [Cahill's
Ill. St. ch. 32, ¶ 255] defines and specifies the securi-
ties which come within the provisions of the Act, and
include investment contracts, such as are sold by the
appellee.  Moreover, the appellee by its act in ap-
plying to the Secretary of State for permission to
transact the business of selling these contracts under
the Securities Act, and procuring permission from the
Secretary of State, is not now in a position to ques-
tion the fact that its right to transact business is
subject to the provisions of the Act.  Section 24 of
the Act [Cahill's Ill. St. ch. 32, ¶ 277] contains the pro-

visions concerning the granting or refusal to grant permission for the sale of securities by the Secretary of State; and paragraph 2 of the section recites the power of the Secretary of State to cancel the permission after it has been granted. The section and paragraph referred to are as follows:

"1. In case any statement or document submitted or filed in the office of the Secretary of State shall, in the judgment of the Secretary of State, in any material part thereof be inadequate, insufficient or not in compliance with this Act, or in case the basis, plan or scheme disclosed by such statements or documents, adopted or filed, would, in the judgment of the Secretary of State, work or tend to work a fraud upon purchasers, or if it shall be made to appear to the Secretary of State, by complaint, through investigation or otherwise, that the statements and documents filed with respect to any securities are false or deceptive in any material particular, or if it shall be made to appear to the Secretary of State that insolvency exists or that conditions with respect to any such securities have so changed that the further sale or offering for sale thereof would work or tend to work a fraud on purchasers thereof, or that any of the terms and provisions of this Act, have not been complied with, or if it shall appear to the Secretary of State by complaint, upon investigation or otherwise, that any securities have been sold or are being offered for sale without compliance with, or in violation of any of the provisions of this Act, the Secretary of State shall, in the name of the People of the State of Illinois, through the Attorney General, apply for an injunction in any court of competent jurisdiction to restrain the further sale or offering for sale of such securities; and the court shall have power to restrain the sale or offering for sale of such securities upon such application and may grant injunctions to enforce the provisions of this Act, in addition to the penalties and other remedies in this Act provided; the petitioner shall not be required to give bond in such proceedings and either party to such suit shall

have the right to prosecute an appeal from the order or judgment of the court.

"2.    The Secretary of State shall also have the power at any time, after five days notice to the seller of securities, when insolvency exists or when in the opinion of the Secretary of State the further sale of such securities would work or tend to work a fraud upon purchasers thereof, to suspend or cancel permission to sell such securities in this State, and thereafter the sale or offer for sale of such securities shall be unlawful, and may rescind such action when it shall be made to appear that further sales of such securities will not work or tend to work fraud upon purchasers, the order suspending or cancelling such authority to sell securities and any rescission thereof shall be reduced to writing and signed by the Secretary of State; any issuer, corporation or person aggrieved or interested in any such suspension or cancellation order aforesaid shall have the right to have the action and decision of the Secretary of State reviewed by the Circuit Court of Sangamon county, the procedure and rights under this paragraph two (2) of this section shall be governed by the provisions of section 18 of this Act in so far as such provisions may be applied."

It is apparent that the power of the Secretary of State to cancel a permission to sell the securities involves a discretion; and substantially the same discretion the Secretary of State exercises in the matter of the giving of permission, in the first instance, for the sale.   It provides that the authority to cancel may be exercised when, in the opinion of the Secretary of State, the further sale of such securities would work or tend to work a fraud upon the purchasers thereof.   It also provides that any issuer, or corporation, aggrieved or interested in such suspension or cancellation order, shall have the right to have the action and decision of the Secretary of State reviewed by the circuit court of Sangamon county; and the procedure and rights in that regard are to be governed by the provisions of Section 18 of the Securi-

ties Act [Cahill's Ill. St. ch. 32, ¶ 271], in so far as such provisions are applicable. The general rules concerning the power of courts of equity to restrain the exercise of the functions of public officials where they involve the exercise of official discretion is concisely stated in 32 Corpus Juris, sec. 384: "Where public officials are intrusted with discretionary power in certain matters, their exercise of such discretion will not be controlled by injunction, in the absence of any showing that their action is fraudulent or in bad faith." That "courts will not hear proofs and attempt to determine whether the discretion is exercised wisely or not." And that, "interference in such a case would be to interfere with the ordinary functions of government." That "courts cannot legislate or invade the province of the other departments of government in matters of policy." That "an injunction may be issued in a case of a gross abuse of discretion, but to constitute an abuse of such discretion, it must appear that it was exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable." The principles enunciated have been followed and repeatedly sustained by the court of review in our own state. *Kelly v. City of Chicago,* 62 Ill. 279; *Fitzgerald v. Harms,* 92 Ill. 372; *People v. Kent,* 160 Ill. 655; *Seass v. Monroe,* 146 Ill. App. 56; *Leonard v. Garland,* 190 Ill. App. 216.

An examination of appellee's bill of complaint reveals that there are no facts stated from which the inference could be drawn that the Secretary of State acted fraudulently, wrongfully, even arbitrarily, in canceling the appellee's permit to do business, or that his act was beyond the powers conferred upon him by the Act. The order of cancellation, which is attached to and made a part of the bill, sets forth the reasons and grounds for the action taken by the Secretary of State; and the only reasonable inference

which can be drawn from the grounds stated in the order is that the exercise of the power of cancellation by the Secretary of State came clearly within the provisions of the Act, and was exercised upon proper grounds, and as a matter of duty. Nor does the bill allege that the reasons and grounds stated in the order of cancellation are unfairly stated, or that they are not based on facts. It is apparent under these circumstances, and under the authorities cited, that the bill of complaint furnishes no legal basis for the exercise of equity jurisdiction, nor legal right to interfere by injunction with an official discretion, exercised in good faith and in the line of duty. Furthermore, the appellee's right to do business in this State is merely a matter of comity, and rests upon statutory permission. *Alpena Portland Cement Co. v. Jenkins & Reynolds Co.*, 244 Ill. 354; *Harding v. American Glucose Co.*, 182 Ill. 551; *White Sewing Mach. Co. v. Harris*, 252 Ill. 361; *Ryerson & Son v. Shaw*, 277 Ill. 524; *Security Mut. Life Ins. Co. v. Prewitt*, 202 U. S. 246; *Hammond Packing Co. v. Arkansas*, 212 U. S. 322. Under the Securities Act which is the source of appellee's permission to do business, a remedy is provided if it feels aggrieved by the action of the Secretary of State. The remedy given is to have the action and decision of the Secretary of State reviewed by the circuit court of Sangamon county.

Where a remedy is provided by law to review or to compel the performance of administrative acts or functions, the remedy given must be pursued, and there is no occasion in that situation for the intervention of a court of equity. *Illinois Bell Telephone Co. v. Commerce Commission*, 306 Ill. 109, 227 Ill. App. 23.

For the reasons stated, the injunction order of the circuit court of Sangamon county is reversed.

*Reversed.*