## Fidelity Investment Association, Appellant, v. Louis L. Emmerson, Secretary of State, Appellee.

### Gen. No. 7,798.

1. APPEAL AND ERROR—*appeal as waiver of constitutional question.* By bringing its cause to the Appellate Court an appellant waives any question as to the constitutionality of an act of the legislature involved in the case.

2. CORPORATIONS—*review of cancellation by Secretary of State of permit to corporation to do business.* An order canceling the license or permit of a corporation to do business in the State is within the discretion of the Secretary of State and is subject to review by the courts only for an abuse of such discretion, the court hearing the matter only as a court of review and not *de novo.*

3. BANKING—*illegality of unorganized bank receiving money on deposit.* It is the settled law of this State, under the express enactment of the General Incorporation Act and the positive provisions of the Banking Act, that the business of receiving moneys on deposit by other than organized banks is illegal, strictly forbidden and becomes a criminal act.

4. FOREIGN CORPORATIONS—*matters to be considered in determining whether foreign corporation engaged in banking business.* In determining whether a foreign corporation is engaged in the banking business in the State, not only the particular acts performed within the State but the connection and function of such transactions to and with its entire business of which they form a part are to be considered.

5. FOREIGN CORPORATIONS—*when foreign corporation engaged in banking business in State.* A foreign corporation which solicits and accepts money for deposit in this State though it issues annuity, income contracts therefor instead of certificates of deposit, which money is sent to another State for investment, is exercising general banking powers of which the transactions in this State form a part and is violating the provisions of the General Incorporation Act of July 1, 1919, Cahill's Ill. St. ch. 32, ¶ 1 *et seq.*

6. FOREIGN CORPORATIONS—*propriety of cancellation by Secretary of State of permit of foreign corporation.* The contracts of a foreign corporation under which it receives deposits of money from citizens of this State, giving therefor annuity, income contracts, are subject to the Securities Act, Cahill's Ill. St. ch. 32, ¶ 254 *et seq.*, and, being void because they constitute an engaging in the banking business, the Secretary of State was fully warranted in canceling the license of the corporation to do business in the State.

Appeal by plaintiff from the Circuit Court of Sangamon county; the Hon. ELBERT E. SMITH, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed December 31, 1924.

GOOD, CHILDS, BOBB & WESCOTT, BROWN, HAY & STEPHENS and ELMER D. BROTHERS, for appellant; JAMES W. GOOD, CLAUDE F. SMITH, WALTER E. BEEBE and ESTHER A. DUNSHEE, of counsel.

EDWARD J. BRUNDAGE, Attorney General, for appellee; CLARENCE N. BOORD, A. D. RODENBERG, JAMES W. GULLETT, B. L. CATRON and MORTIMER C. GROVER, of counsel.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This case in substance was before this court in a case between the same parties, based upon a bill in equity, filed by the appellant to enjoin the appellee from interfering with the business of appellant, at the April term, A. D. 1924, of this court, and a statement of the case as therein set forth, and the opinion of the court is particularly referred to, and to which

opinion in this case the court specifically adheres. [See 235 Ill. App. 9.]

The appellant, after the order entered by the appellee, Secretary of State, canceling the license or permit of appellant to do business in the State of Illinois, appealed to the circuit court of Sangamon county for a review of said order, under section 113 of chapter 121½, Smith-Hurd's Rev. St. Ill. 1923. [Cahill's Ill. St. ch. 32, ¶ 271.] Upon such appeal the circuit court of Sangamon county affirmed the order of the Secretary of State, appellee, and the record made before that court is brought to this court by appeal for review.

We have examined the record fully, and unless there are some errors of law or fact intervening, the judgment of the circuit court of Sangamon county should be affirmed.

It is contended by appellant that section 24 of the Securities Act [Cahill's Ill. St. ch. 32, ¶ 277] is unconstitutional and void. Appellant, by bringing this cause to an Appellate Court, has waived any question as to the constitutionality of the Act. *Haas Elec. & Mfg. Co. v. Springfield Amusement Park Co.*, 236 Ill. 452; *Armour & Co. v. Industrial Board*, 275 Ill. 335.

It is further contended by appellant that the hearing in the circuit court is a trial *de novo*, and appellant cites: *Klicka v. Klicka*, 105 Ill. App. 369; *Anderson v. Patty*, 168 Ill. App. 159; 37 Cyc. 145; 15 Corpus Juris 475; *People v. Highway Com'rs*, 103 Ill. 643, and *Pool v. Breese*, 114 Ill. 599. We have examined all of these cases and they are either cases where the appeal is from the probate to the circuit court and by statute provided that the trial shall be *de novo*, or are appeals from the order of the highway commissioners to the supervisors, and are provided for by statute and are appeals from one administrative board to another administrative board and they are not applicable to this case.

The statute provides in substance that if the court shall find from the statement, documents and pertinent evidence that the sale of securities upon the plan or scheme will not work a fraud upon the purchaser, and shall further find that the Secretary of State wrongfully concluded that the sale or offering for sale of such securities would work a fraud upon the purchasers, and that the petitioner is entitled to the benefits of and has complied with the provisions of the Act, the court may order the statement filed. [Cahill's Ill. St. ch. 32, ¶ 271.] Under this statute the court must find that the Secretary has wrongfully concluded, etc.

The order entered is within the discretion of the Secretary of State, and the exercise of such discretion therefore is not subject to review, except for an abuse. *Commerce Commission v. Cleveland, C., C. & St. L. Ry. Co.,* 309 Ill. 165; *Wabash, C. & W. R. Co. v. Commerce Commission,* 309 Ill. 412. The court is not substituted for the administrative officer to exercise the discretion, but is merely a court of review. *Durand v. Dyson,* 271 Ill. 390. The trial in the court of review is not *de novo,* but to ascertain if the order or rule of the commission or administrative officer is wrongful or unreasonable. From a careful review of all the testimony submitted, we cannot say that the action of the administrative officer in this case was unreasonable or wrongful. Appellant is engaged in the business of selling annuity contracts in the State of Illinois. It is a West Virginia corporation. It solicits deposits from its patrons. It invests the funds in interest-bearing securities. It maintains an office in the State of Illinois with a cashier, records and other office equipment. The terms of its annuity contract call for deposits monthly during a period of ten years, after which a sum of money called an "annuity" is paid to the contract holder, annually, during the following ten years. It takes twenty years for the con-

tract to mature. Appellant maintains a force of solicitors and sales agents to solicit deposits and sell such contracts, and a number of witnesses testified as to various fraudulent practices, adopted by said agents, to secure the moneys of servants and working people who claimed to be misled into depositing their moneys and accepting said contracts. Whether actual fraud was practiced by such agents or not, we do not deem it necessary, in this opinion, to determine. Loan privileges are granted by the terms of the contract, after deposits have been made monthly for a period of two years, by deducting out of any loan the interest thereon for a period of one year and the deposits required, by the terms of the contract, to be paid to keep the contract in force for the ensuing year. The contract recites that it is nonforfeitable and that in case deposits should be discontinued, the registered owner of the contract may, at any time following such discontinuance, surrender his contract and receive a new income contract for the same amount, the maturity date of such new contract to be determined by allowing as a credit thereon and applying as a payment covering a period preceding the date of reissuance, the total amount paid in on the former contract, with a reissuance fee of $2. There is no cash surrender value in the contract. It does not pretend to be affected by the life or death of the contract holder and is not a form of insurance. 3 Corpus Juris 202. The annual income returned to the contract holder equals the deposits paid in, with interest thereon compounded semiannually at the rate of a fraction over 3 per cent.

Appellant was licensed under the laws of West Virginia "to purchase, acquire, buy, sell, own, hold, dispose of and deal in the stocks, bonds, mortgages, debentures, obligations and other securities of corporations and persons for its own account and for others on commission; to loan money on real estate security; to loan money on personal and other security; to

transact on commission the general business of a fiscal agent; to transact any other business incident to any of the above-named enterprises which a person, firm or partnership might engage in or do.'' And appellant was specially incorporated under a statute of West Virginia, authorizing it to sell its annuity contracts under the supervision of the Insurance Department of said State. Appellant was granted other powers by its charter, under the laws of West Virginia, not necessary to be recounted here.

And appellant on March 8, 1915, was licensed, among other things, to transact the following business in this State:

''To buy, sell and otherwise deal in bonds and other corporate securities and obligations of any and all kinds, including public obligations payable out of the proceeds of taxation and the securities and obligations of any government, state, municipality or other governing or taxing body, and of any corporation, public, *quasi* public, private, domestic or foreign''; also ''to make, sell and deliver the negotiable coupon bearing or registered promises of the corporation to pay specific sums of money, on specific dates, and to pledge its property and assets in payment thereof,'' and prior to the cancellation of the license was permitted to exercise such powers in Illinois.

Appellant has substantially one-half of its twenty-two thousand contract holders in the State of Illinois and in January, 1924, had resources to the amount of $5,535,250.26, all of which is forwarded to and invested by its head office in the State of West Virginia. Appellant contends it is not in any manner amenable to the insurance or banking laws of this State. Appellant's system of business with its annuity contract holders is confined exclusively to the handling of money, accepting deposits and paying its contracts, in money, with the additional feature of loans. It is charged that appellant is exercising powers ultra

vires, and violating various provisions of the General Incorporation Act of 1919 and is engaged in the banking business.

Under the General Incorporation Act of this State, approved June 28, 1919, corporations may be organized for any lawful purpose, except for the purpose of banking, insurance, real estate brokerage, the operation of railroads or the business of loaning money. Section 3 [Cahill's Ill. St. ch. 32, ¶ 3] provides for the licensing of *building corporations, agency and loan corporations,* and real estate and improvement corporations, the powers of which are all carefully defined; but it is provided that no corporation organized for one of the purposes specified in this section shall have any other object or purpose.

It is provided in section 13 of the Act [Cahill's Ill. St. ch. 32, ¶ 13] that no corporation created under the provisions of the Act shall, except as provided in the Act, by any implication or construction, be deemed to possess the power of carrying on the business of discounting bills, notes or other evidence of debt, or receiving deposits of money, or foreign coins, or buying and selling bills of exchange, or issuing bills, etc. It is further provided that corporations created under the provisions of any former law of this State, or under the provisions of this Act, to buy, sell or otherwise deal in notes "(not including the discounting of notes)," open accounts and other similar evidences of debt "(not including bills of exchange)," shall not be construed to be within the prohibition of the Act, but no corporation shall be created under the Act to deal in commercial paper, in the exercise of the functions of bank discount. Section 26 of the Act [Cahill's Ill. St. ch. 32, ¶ 26], under which appellant obtained its license to transact business in this State, provides that foreign corporations shall be subjected to all the liabilities, restrictions and duties that are or may be imposed upon corporations of a like character, organ-

ized under the general laws of this State, and shall have no greater powers. And it is further provided, in section 84 of the Act [Cahill's Ill. St. ch. 32, ¶ 84], that no foreign corporation shall engage or continue in any kind of business in this State, the transaction of which by domestic corporations is not permitted, and that a foreign corporation, admitted to do business under the Act, shall enjoy the same, but no greater rights and privileges, and be subject to all the liabilities, restrictions, duties and penalties now in force or hereafter imposed upon domestic corporations of like character.

Section 16 of chapter 16½ (Smith-Hurd's Rev. St. 1923), the Banking Act [Cahill's Ill. St. ch. 16a, ¶ 16], provides that after January 1, 1921, no natural person or natural persons, firm or partnership, shall transact the business of banking, or the business of receiving money upon deposit, or shall transact the business of transmitting money to foreign countries, or receiving money on deposit to be transmitted to foreign countries, and the only provisos are that express, steamship and telegraph companies may continue their business of transmitting money and receiving money to be transmitted, and that banks, incorporated under the laws of this State or of the United States, may appoint natural persons, as agents, to receive deposits of savings in and through the public schools. The violation of this section is declared a misdemeanor, to be punished by fine not exceeding $1,000, or by imprisonment in the county jail not to exceed one year. It is to be noticed that the prohibition in the Banking Act from receiving money on deposit is disjunctive and is not coupled with any other act. Likewise, the prohibitions from "the business of transmitting money to foreign countries," or "the business of receiving money on deposit to be transmitted to foreign countries," are each disjunctive and coupled with no other act. A "foreign

country," as construed by our courts in connection with the State, for all legal purposes, means and embraces a sister State (26 Corpus Juris 889). The term "natural person" or "natural persons" used in the Banking Act extends to and applies to "bodies politic" and "corporate." (Clause 5, sec. 1, ch. 131, Rev. St. Smith-Hurd 1923). [Cahill's Ill. St. ch. 131, ¶ 1, clause 5.] The prohibition from "receiving deposits in money or foreign coins," in the General Corporation Act, as cited, is also disjunctive and is coupled with no other act, so that we conclude it is the settled law of this State, both under the express enactment of the General Incorporation Act and the positive public policy and provisions of the Banking Act, that the business of receiving moneys on deposit, by other than organized banks, is illegal, strictly forbidden and becomes a criminal act.

Appellant, under its charter powers in West Virginia, is authorized to buy, sell and own the bonds, obligations and other securities of corporations and persons, for its own account, to loan money on real estate security, to loan money on personal and other security, and to these powers is added the sweeping authority, "to transact any other business incident to any of the above-named enterprises which a person, firm or partnership might engage in or do." Under the law of this State, appellant might be empowered "to buy, sell or otherwise deal in notes (not including the discounting of notes)," but under the West Virginia law appellant may not only "buy, sell or otherwise deal in notes," but to this power is added the right and authority *to transact any business incident thereto, which a person, firm or partnership might engage in or do.* A person, firm or partnership even in Illinois may discount a note, not as a general business, without authority, but as a business act. Everything of an incidental nature, in connection with said business, that any person, firm or part-

nership might do, appellant, by its charter powers, is authorized to do in its home State. It may discount notes and commercial paper, draw drafts and bills of exchange.

Appellant receives deposits in the State of Illinois from its contract holders. The annuity contract provides that appellant "covenants and agrees to maintain a reserve fund for the retirement of all such income contract, which shall at any time be not less than the total amount, then payable, under the terms and provisions thereof, the same to be invested in approved securities and deposited in trust in accordance with the laws of the State of West Virginia."

Appellant is licensed to sell these contracts under the banking departments of the States of Indiana and Pennsylvania. It also maintains offices at Washington, D. C., Delaware and West Virginia. Payments and deposits are made upon these contracts in Illinois, at its Chicago office, and the moneys forwarded to its head office in West Virginia. Outside of these payments, deposits and loans or advancements to contract holders, no other business apparently is transacted in this State. Is appellant exercising the functions of a bank? The Supreme Court of this State, in *Reed v. People,* 125 Ill. 592, specifically defined a bank. It had before it the question of the constitutionality of an act passed by the legislature, entitled, "An Act to provide for the organization of savings societies, or institutions for savings, for their supervision and for the administration of their affairs," enacted in 1887, and whether that Act became a law of the State without a vote of the people, in accordance with the banking provision of the constitution.

The defendant corporation, seeking to avail itself of this legislation, was chartered as "Chicago Society for Savings." Defendant contended that section 15 of the Act declared that no such corporation, organized under the Act, shall be deemed a bank or company

having or exercising banking powers, but the court held that these declarations did not affect the powers conferred nor limit the authority of the corporation. The court say: "Whether the corporation may be called a bank or not is a matter of no moment. If any of the sections of the act, in plain and express words, confer banking powers, the character of the corporation is to be determined from the powers thus. conferred, and not from the fact that some portions of the act declare that the corporation shall not be deemed a bank."

The court further defined a bank in the following language, quoting from *Oulton v. German Savings & Loan Society,* 17 Wall. (U. S.) 117:

" 'Banks, in the commercial sense, are of three kinds, to wit: First, of deposit; second, of discount; third, of circulation. Strictly speaking, the term "bank" implies a place for the deposit of money, as that is the most obvious purpose of such an institution. Originally, the business of banking consisted only in receiving deposits,—such as bullion, plate, and the like,—for safe-keeping, until the depositor should see fit to draw it out for use; but the business, in the progress of events, was extended, and bankers assumed to discount bills and notes and to loan money upon mortgage, pawn or other security, and at a still later period to issue notes of their own intended as a circulating currency and a medium of exchange instead of gold and silver. Modern bankers frequently exercise any two or even all three of those functions, but it is still true that an institution prohibited from exercising any more than one of those functions is a bank in the strictest commercial sense.'

"Another interesting case upon the same subject is *Bank for Savings v. Collector,* 3 Wall. (U. S.) 495. The act under which the bank was incorporated was, in many respects, similar to the act under which appellant is incorporated. The bank had no capital stock. It had no shareholders. No corporators were interested in the profits. The corporators were trustees, who constituted a board of managers. The ques-

tion arose whether the incorporation was engaged in the business of banking, within the meaning of the United States Revenue law, and the court held that savings banks which receive deposits, and lend the same for the benefit of depositors, although they may have no capital stock, and neither make discounts nor issue any money for circulation, are engaged in the business of banking, within the meaning of the Revenue law, which provides for a tax upon any person, bank, association or company engaged in the business of banking.''

Appellant's business is to be construed, from its entire operations, not only the particular acts performed in Illinois, but the connection and function of the Illinois transactions, to and with appellant's entire business of which they form a part.

In *Reed v. People, supra,* it was held that under the provisions of the Act the appellant was invested with full power to receive money on deposit and to discount notes, which were banking powers, and it was held that the Act required a vote of the people to become a law. Our court has not deviated from its holding in *Reed v. People* as to what constitutes a bank and banking powers (*Wedesweiler v. Brundage,* 297 Ill. 232), and the court holds that the business is of a public character and is properly subject to statutory regulations for the protection of the public. Under appellant's powers in West Virginia, it is enabled to loan money and discount notes and exercise powers, denominated banking powers by the courts of Illinois. It makes no difference that appellant is not engaged in discounting notes in Illinois. The business that appellant carries on in Illinois is a part and portion of its general business and the money of Illinois citizens is being used, by appellant, to discount notes in West Virginia, Pennsylvania and Indiana.

Appellant solicits and accepts moneys for deposit in Illinois, and it is a distinction without a difference that annuity, income contracts are issued for the de-

posits in place of certificates of deposit, payable upon demand, or at some future time. These contracts violate the banking laws of the State the same as the savings certificates in *Reed v. People, supra.* That appellant does not exercise all of its powers in Illinois does not change the color of those acts that it does perform in this State, for if a banking institution of another State should open branches in Illinois to receive deposits only, the same to be forwarded to its principal place of business, we conclude that all of its transactions in Illinois would be determined and construed by the nature of the business, at the fountain head, and unless licensed by the State or the federal law it would be operating in violation of law, and such branches, to receive deposits or to receive deposits to transmit to a sister State, we have concluded are illegal. So much is this true of the case at bar that citizens of Illinois, over ten thousand in number, have made deposits in Illinois to an amount in excess of $2,500,000, which sums have been sent to a foreign State for investment by an institution having full banking powers, as judged by the laws of our own State. The Illinois citizen and this State have no means or power of inspection, regulation or limitation, and while the funds and business may be adequately guarded by the laws and public officials of the sister State, nevertheless, the Illinois citizen when depositing his moneys in a bank in Illinois, a business of a public character, is entitled to the protection of the statutory regulations of this State or of the United States to guard his funds.

We do not think the determination of this case is dependent upon the contracts being sold, free from fraudulent practices and misrepresentations in the sale, but, broadly speaking, we are convinced that appellant is exercising general banking powers in its business, of which the Illinois transactions form a part, and is violating provisions of the General Incorporation Act passed and approved July 1, 1919. It

does not answer the contention to urge that certain insurance companies are contracting annuities of a similar nature, disconnected from any condition of life or death of the annuitant. Insurance companies are granted certain specific statutory powers and are subject to State regulation and control, and, otherwise, are no more privileged to usurp banking powers than appellant.

Appellant contends that the contracts in question are not subject to the Securities Act. Section 2 of the Act [Cahill's Ill. St. ch. 32, ¶ 255] defines securities as "investment contracts," among other definitions. It was held in *Kinross v. Cooper,* 224 Ill. App. 111, that a business or trading trust came under the Act, and it made no difference whether it was a common-law trust or partnership. We think there can be no question but that the contracts in question are subject to the Act.

It was held in *Ryerson & Son v. Shaw,* 277 Ill. 530: "Where the State has fixed the conditions under which a foreign corporation may transact business therein, and declared it unlawful for such a corporation to do business in the State, unless it has complied with the conditions prescribed by the Act, a contract of the corporation is void and no action can be maintained by it thereon. (*Cincinnati Mut. Health Assurance Co. v. Rosenthal,* 55 Ill. 85; *United Lead Co. v. Reedy Elevator Mfg. Co.,* 222 Ill. 199; *Finch & Co. v. Zenith Furnace Co.,* 245 Ill. 586.)" And the same rule is laid down in *McIlvaine v. Foreman,* 292 Ill. 229.

The contracts issued by appellant being void, not only tended to but did work a fraud upon purchasers, and appellee, in the exercise of his discretion under the administrative powers provided in the Securities Act, was fully warranted in canceling the license of appellant.

The judgment of the circuit court of Sangamon

county and the order of appellee are therefore affirmed.

*Affirmed.*